**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA 234464)
(Eddie) Jae K. Kim (CA 236805)
Scott G. Braden (CA 305051)
1350 Columbia St. Ste. 603
San Diego, California 92101
Tel: (619) 762-1900
Fax: (619) 756-6991
tcarpenter@carlsonlynch.com
ekim@carlsonlynch.com
sbraden@carlsonlynch.com

*Attorneys for Plaintiff MEHRAND DAVID ALAEI and the Proposed Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHRAN DAVID ALAEI, an individual, all others similarly situated, and the general public,<br><br>              Plaintiff,<br><br>vs<br><br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO), a Delaware corporation; GEICO GENERAL INSURANCE COMPANY, a Maryland corporation; and DOES 1 to 10,<br><br>              Defendants. | Case No. **'20 CV 0262 JM   WVG**<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

- 1 -
CLASS ACTION COMPLAINT

Plaintiff MEHRAN DAVID ALAEI ("Plaintiff") on behalf of himself and all others similarly situated, brings this consumer class action against Government Employees Insurance Company (hereinafter "GEICO") and GEICO General Insurance Company (hereinafter "GEICO General") (collectively "GEICO" or "Defendant") for unlawful, unfair, and deceptive business practices in violation of California Business & Professions Code Section 17200, *et seq.*, California Business & Professions Code Section 17500, *et seq.*, and California Civil Code Section 1750, *et seq.* and alleges as follows:

## I.     NATURE OF ACTION

1.     GEICO has engaged in the most substantial "bait and switch" marketing campaign in the history of consumer auto insurance in the state of California. Consumers, including Plaintiff, routinely call GEICO seeking quotes to lower their auto insurance coverage premiums. The vast majority of consumers who call GEICO, including Plaintiff, are seeking an "apples to apples," comparison of their existing auto insurance policy, to an identical policy offered by GEICO. Consumers, including Plaintiff, call GEICO in order to compare the price of GEICO's full coverage insurance premium to their own, in the hope of purchasing equal, but less expensive auto insurance coverage.

2.     Consumers, including Plaintiff, who called seeking a full coverage auto insurance policy, were instead, systematically offered GEICO's "Full *Comprehensive* Package," an inferior policy that did not include "collision" insurance – leaving them exposed to substantial risk of loss for damage caused to their own vehicle in the event of an at-fault accident. The "Full Comprehensive Package" offered by GEICO during the sales pitch was invariably less expensive than the customers' own, actual full coverage policy. Customers, including Plaintiff, were duped by GEICO into switching their car insurance coverage to the inferior "Full Comprehensive Package," without any notice or knowledge that the policy they purchased from GEICO over the phone did not include collision coverage.

3.     Indeed, a recent study conducted by Insurancequotes.com demonstrated that sixty-eight percent (68%) of Americans incorrectly believe that comprehensive auto

insurance covers car damage from collision.[1]   Instead of demystifying this legitimately misleading and confusing concept, GIECO instead preyed on this widely held misunderstanding by emphasizing that it is offering a "full" and "comprehensive" coverage that is comparable to competitors' insurance plans that did include collision coverage in order to substantially bolster its profits.

4.   Remarkably, after internal outcry from their own employees over the practice, (including the establishment of an internal, digital message board topic) GEICO issued an urgent memo directing its sales force to cease the conduct. The memo states in relevant part:

> **Effective immediately:**   The terms "Comprehensive," "Safety Package," "Physical Damage," etc. can confuse and lead some customers to believe they have "full coverage".… We have seen some customer complaints for this.…

(*See* Exhibit "A".)

5.   GEICO's conduct resulted in the fraudulent sale of insurance policies to unsuspecting customers who wrongly believed they were receiving "full coverage" on their automobiles.

6.   Plaintiff and those similarly situated ("Class Members") relied on GEICO's representations that the insurance policy they were purchasing was identical to the policy they presently had; including the existence of "full coverage" – meaning liability and collision insurance coverage. As a result, Plaintiff and the Class suffered monetary damages as a result of Defendant's false and deceptive misrepresentations and omissions.

## II.   <u>JURISDICTION AND VENUE</u>

7.   This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of California; Defendant GEICO General

---

[1] https://www.insurancequotes.com/auto/insurance-myths-keep-americans-guessing-61919

CLASS ACTION COMPLAINT

Insurance Company is a Maryland Corporation, with its principle place of business in Maryland and Defendant Government Employees Insurance Company is a Delaware Corporation with its principle place of business in Maryland; (3) the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

8.     The Court has personal jurisdiction over Defendants because Defendants conduct business in California. Defendant has marketed, promoted, and sold auto insurance policies in the State of California, and Defendant has sufficient minimum contacts with this State and/or has sufficiently availed itself of the market in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while Plaintiff resided in this judicial district.

### III.   PARTIES

10.     Plaintiff Mehran David Alaei resides in San Diego County, California. On or about August 2017, Plaintiff called GEICO and requested and received an "apples to apples" quote from GEICO for auto insurance coverage for both of his vehicles, a 2012 Lexus RX350 (owned by Plaintiff) and a 2016 Lexus ES350 (Leased by Plaintiff). At the time, both vehicles were insured by ESURANCE with "full coverage," meaning - a policy which included both liability and collision coverage.

11.     During the call to GEICO, Plaintiff agreed to receive an "apples to apples" comparison quote from the GEICO sales representative because the representative stated, consistent with GEICO's general marketing message, that Plaintiff could save up to 15% on the policy by switching to GEICO. The GEICO representative then informed Plaintiff that he could save approximately $600.00 every six months by switching to the GEICO, "FULL COMPREHENSIVE COVERAGE POLICY." When Plaintiff asked the GEICO representative if this was the same policy as the one Plaintiff currently had with ESURANCE for both of his vehicles, the representative replied in the affirmative.  On or

CLASS ACTION COMPLAINT

about August 23, 2017, Plaintiff accepted GEICO's offer and paid the quoted premium by credit card over the phone.

12.     On or about October 13, 2018, Plaintiff's vehicle was involved in an at-fault auto accident. Plaintiff contacted GEICO and reported a claim and received claimed number 0606643630101017.

13.     On or about October 13, 2018, Plaintiff was informed by GEICO that Plaintiff had liability coverage but no collision coverage for the 2012 Lexus RX350 and that the claim for repairs to the 2012 Lexus RX350 was denied by GEICO.

14.     Plaintiff pleaded with the GEICO representative and reminded him that GEICO had provided an "apples to apples" quote in August of 2017 and that the policy held with ESURANCE was a full coverage policy with both liability and collision coverage. The GEICO representative informed Plaintiff that his car in fact did not have collision insurance and the claim was denied.

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     GEICO Revolutionized the Auto Insurance Market Through Advertising.

15.     GEICO is the second largest auto insurer in the United States, after State Farm. As of 2017, GEICO provided auto insurance coverage for more than 24 million motor vehicles owned by more than 15 million policy holders. GEICO writes private passenger automobile insurance in all 50 U.S. states, including California. GEICO primarily sells policies directly to the consumer over the phone, through its website, and through local agents, called GEICO Field Representatives.

16.     In the mid-1990's, insurance company advertising was considered novel and GEICO desired to move the public perception of insurance to that of a commodity rather than perceiving insurance through a long-term relationship with a full service agent, as was the model at its primary competitor, State Farm. The predominant advertising for traditional insurance companies focused on the bad events which needed insurance (similar to Allstate's "Mayhem" ad campaign) and GEICO believed that its target audience felt that

CLASS ACTION COMPLAINT

insurance was just another necessary expense; the relationship to an agent was a value-less example of an overpriced middle-man.

17.    As a result, GEICO deployed a comprehensive, years-long marketing campaign. The advertising strategy incorporates a saturation-level amount of print (primarily mail circulars) and television parody advertisements, as well as radio advertisements. GEICO branded its primary marketing tag-line, through sheer volume and repetition in consumer media. GEICO's signature marketing slogan: "15 minutes could save you 15% or more on car insurance," is ever present in mass media and television advertising.

18.    Over the last ten years, GEICO has spent billions of dollars in advertising, featuring several well-known mascots, including the GEICO "Cavemen", the GEICO "Piggy" and GEICO "Gecko". GEICO could afford this expenditure because of its unique business model in offering "direct to consumer" insurance; bypassing commissions to insurance brokers. Historically, GEICO did not employ insurance agents like its more traditional competitors, State Farm and AllState, and therefore was not financially burdened with agent commissions.

19.    However, in recent years, the direct to consumer model of insurance services has experienced robust growth and significant competition. Other auto insurance companies took note of GEICO's robust growth and several have tried to emulate the direct to consumer marketing model. Notably, Progressive Insurance has invested heavily in brand advertising and is poised to overtake GEICO as the number two auto insurance carrier in the market. Internet-based and online-only models like Esurance have also entered the direct to consumer insurance market.

20.    The increasing competition has made it exceedingly more difficult for GEICO to deliver on its signature slogan; its promise that it could save consumers more than 15% on car insurance.

CLASS ACTION COMPLAINT

**B.     GEICO's Misleading Sales Pitch to Consumers**

21.     The vast majority of GEICO's policies are sold over the phone by their Field Representatives. GEICO employs several hundred sales representatives in the state of California, including nearly 200 in its San Diego office. GEICO retains exclusive control over its sales narrative and the marketing tactics employed by its representatives to convince consumers to purchase insurance from them.

22.     There are well known "terms of art" used in the insurance industry to explain coverage. The two most popular forms of auto insurance coverage are, "Liability," which covers damage that an insured causes to another driver; and "Collision," which covers damage to the insured's vehicle in the event of an accident where the insured is determined to be "at fault" for the cause of the accident. While the State of California requires every driver to carry a minimum amount of Liability insurance, automobile lenders / financiers typically require car owners who finance or lease their vehicles to purchase both forms of insurance, liability and collision; the combination of which is referred to as "full coverage".

23.     Feeling the pressure to continually deliver on its brand-promise to offer consumers a 15% discount on their auto insurance premiums, GEICO turned to improper marketing practices that prey on consumer confusion regarding the various types of automobile insurance coverage offered in the market.

24.     GEICO is uniquely aware of the auto insurance consumer's understanding of the phrase "full coverage". GEICO and consumers alike, understand that if you were to purchase an automobile policy with "full coverage," a consumer could reasonably expect to receive both liability and collision insurance on their vehicle.

25.     Consumers are far less aware of the term and frequently do not understand what is meant by, "Comprehensive Insurance."  Comprehensive insurance is intended to be an "add on" to either a liability-only policy or a full-coverage policy.  While 88 percent of Americans owned a car in 2018, a recent study conducted by Insurancequotes demonstrated that "68 percent of Americans incorrectly believe that comprehensive auto

CLASS ACTION COMPLAINT

insurance covers car damage from collision.  This is decidedly not the case."[2]   An NBCNews report published on September 4, 2019 cited this study and concluded that "[w]hen it comes to  auto insurance, [the difference between collision and comprehensive coverage] is probably the biggest area of confusion.  Many people, it seems, don't understand what they're buying."[3]   Indeed, numerous auto insurance companies felt it necessary to include in their websites pages devoted to noting this rampant and costly confusion and attempt to demystify it, *e.g.*:

- American Family Insurance:  "Do you get comprehensive and collision insurance confused?  Don't worry – many people do."[4]
- The Hartford Insurance, in its webpage addressing AARP members: "Comprehensive and collision insurance are frequently confused."[5]
- Progressive:  "Comprehensive insurance is commonly confused with collision."[6]
- Rockford Mutual Insurance Company:  "Many customers often confuse collision insurance with comprehensive insurance, or visa versa."[7]

26.    However, at some point in 2015, GEICO began to employ marketing tactics that preyed on consumer confusion regarding the meaning of "Comprehensive" insurance. Comprehensive, by dictionary definition means: "***complete, including all or nearly all elements or aspects of something***." [8]

---

[2] https://www.insurancequotes.com/auto/insurance-myths-keep-americans-guessing-61919
[3] https://www.nbcnews.com/better/lifestyle/7-things-you-should-know-about-auto-car-insurance-ncna1049086
[4] https://www.amfam.com/resources/articles/understanding-insurance/comprehensive-vs-collision-insurance
[5] https://www.thehartford.com/aarp/car-insurance/collision-insurance
[6] https://www.progressive.com/answers/comprehensive-insurance/
[7] https://www.rockfordmutual.com/blog/what-difference-between-collision-insurance-and-comprehensive-insurance
[8] *See*, Oxford English Dictionary, 2018 Edition.

CLASS ACTION COMPLAINT

27.     When consumers would contact GEICO seeking an "apples to apples" comparison of their existing full-coverage insurance policy to an identical GEICO policy, GEICO would, instead, offer the consumer a "FULL COMPREHENSIVE PACKAGE" insurance plan; an insurance policy that did not provide collision insurance for vehicles that the consumer was not presently under a legal and/or contractual obligation to insure with collision insurance.

28.     The use of the word "Comprehensive," in combination with the term "Package" in the description of the "FULL COMPREHENSIVE PACKAGE" insurance product is confusing and misleading to consumers. Consumers have a general understanding of the dictionary meaning of the term, "comprehensive." Consumers, including Plaintiff, reasonably equate "Comprehensive" with its actual meaning: "complete". Consumers, including Plaintiff, who purchase comprehensive insurance packages, reasonably believe that they have purchased full coverage for their vehicles. GEICO is keenly aware of this consumer confusion and has weaponized it for its economic advantage.

29.     GEICO furthers this consumer confusion by including the word, "Full" in its description of the "FULL COMPREHENSIVE PACKAGE," despite the fact that this product is an inferior policy from the standpoint of the consumers' expectations.

30.     By combining the word "Full" with "Comprehensive", consumers, including Plaintiff, reasonably believed they were purchasing a full coverage auto insurance policy on both of their vehicles, when in fact they were not. By failing to actually include in the quote and provide the collision insurance, GEICO, in turn, was able to deliver on its promised 15% savings on the prospective customer's auto insurance premium. The premiums were less expensive than their competitors because they were providing less coverage to their customers.

C.     **GEICO's Field Representatives Revolt Over GEICOS's Fraudulent Tactics**

31.     GEICO employed this improper sales tactic by training and encouraging their Field Representatives to push the "Full Comprehensive Package" insurance product on

those unsuspecting customers who presented to GEICO for a rate quote with a vehicle for which they were not legally or contractually obligated to provide "Collision" insurance. GEICO'S Field Representatives, in providing the "Apples to Apples" quotes for unsuspecting customers, would market the "FULL COMPREHENSIVE PACKAGE," as a full coverage product, at a substantial discount.

32.     Upon information and belief, GEICO experienced significant success in the improper marketing of their "FULL COMPREHENSIVE PACKAGE" insurance product. One confidential source interviewed by Plaintiff with direct knowledge of the practice, estimated that thousands of policies had been bound in the state of California utilizing this fraudulent misrepresentation.

33.     Dozens of consumers contacted GEICO complaining that their insurance policy did not have the collision coverage that they believed they were purchasing over the phone.

34.     GEICO's own Field Representatives became increasingly uncomfortable with the practice and initiated an internal message board topic to voice their well-founded concerns that the practice was fraudulent and misleading to GEICO's customers.

35.     Consequently, Plaintiff and the Class Members suffered injury in fact and lost money or property as result of Defendant's wrongful conduct.

**D.     GEICO Admits to the Practice, but the Cure is almost as bad as the Disease.**

36.     At some point in mid-2019, in response to the outcry internally generated by their Field Representatives and their own customers' complaints, GEICO attempted to issue a correction to its fraudulent practice by updating the "GEICO SALES TRAINING AND PERFORMANCE" guide (hereinafter, the "Guide"). The Guide is required reading, training and procedure for all GEICO Field Representatives. GEICO set forth in the guide:

> **Required Reading**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> **What's Happening: Reminder for clarifying Coverage Counseling conversation in California.**

CLASS ACTION COMPLAINT

> **Effective Immediately:** The terms "Comprehensive," "Safety Package", "Physical Damage", etc. can ***confuse*** and lead some ***customers to believe they have "full coverage".*** We want our customers to have a full understanding of their coverage package, including ***when offering Comprehensive without Collision***, to do so we are making this change to ensure clarity on what perils their insurance covers.

(*See* Exhibit "A" – GEICO internal Memorandum (emphasis, underlining added).)

37. The issued update to the Guide is a clear admission to the fraudulent sales practice of offering the "Full Comprehensive Package" insurance policies without collision insurance. GEICO acknowledges its existence, admits that it is misleading to customers and that they were in fact selling Comprehensive without Collision utilizing this unsavory tactic.

38. The update continues and acknowledges that the update became necessary because of multiple consumer complaints and the internal outcry of the Field Representatives:

> "We have seen some customer complaints for this."

> "This change was a direct result of your feedback."

39. The update to the Guide provides example conversations that the Field Representatives should ***NOW*** engage in with prospective customers while selling them the Comprehensive without Collision insurance policies:

> **Example 1:**

> *"Now that we have worked through the package you would like to purchase, I just want to let you know that since you do not have collision protection, your vehicle will not be covered if you are in an at fault accident".*

(*See* Exhibit "A".)

40. However, the example conversation occurs ***AFTER*** the consumer has already told the Field Representative from GEICO that they desire a full coverage insurance, because they presented GEICO with existing full coverage insurance. Remarkably, the

update to the Guide specifically instructs the GEICO Field Representative to inform the customer of the absence of collision insurance, *AFTER* the customer has made a commitment to buy.

41.     The update to the Guide explicitly instructs the Field Representatives in this regard:

> "The agent must disclose this prior to taking payment but *after the commitment to buy.*
>
> **Sell! Sell! Sell!"**

42.     Rather than give up their misleading tactics, the updated Guide instructs GEICO's Field Reps to make the crucial disclosure *after* the customer has agreed to purchase the inferior policy. And then it re-emphasizes to the Field Representative, that GEICO's focus is ultimately on their bottom line by closing with the instructions to **"Sell! Sell! Sell!".**

43.     As a result of the conduct alleged herein, Plaintiff and the proposed Class have been misled by GEICO's fraudulent sales tactics and purchased insurance products that were inferior to the coverage they believed they were purchasing.

## V.     <u>CLASS ALLEGATIONS</u>

44.     Plaintiff brings this action on behalf of himself and all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek certification of the following Class against Defendant for violations of California state laws:

> All consumers within the State of California who purchased a "Full Comprehensive Package" from GEICO and did not receive collision insurance on their vehicle during the applicable statute of limitations.

Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

CLASS ACTION COMPLAINT

45.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff.

46.    <u>Existence and Predominance of Common Questions of Law and Fact</u>: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members.    These common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendant made false and/or misleading statements to Plaintiff, the Class and the public the inclusion of collision insurance coverage for the "Full Comprehensive Package";

b.  Whether Defendant omitted material information to Plaintiff and the proposed Class concerning the existence of collision insurance coverage for the "Full Comprehensive Package";

c.  Whether Defendant's advertising and/or marketing for the "Full Comprehensive Package" is misleading and deceptive to a reasonable consumer;

d.  Whether Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Full Comprehensive Packages;

e.  Whether Defendant's omissions concerning the Full Comprehensive Packages were likely to deceive a reasonable consumer, and therefore the Class and public at large;

f.  Whether Defendant actively concealed material information regarding the Full Comprehensive Packages;

g.  Whether Defendant advertised the Full Comprehensive Packages with intent to sell them not as advertised;

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7

    h.  Whether Defendant engaged in false advertising with respect to the Full Comprehensive Packages;

    i.  Whether Defendant breached their contract with Plaintiff and other purchasers of the Full Comprehensive Packages; and

    j.  Whether Defendant engaged in bad faith in inducing Plaintiff and other purchasers of the Full Comprehensive Packages, by indicating that such insurance policies provided full coverage, when in fact they do not.

8
9
10
11
12
13

47.   Typicality: Plaintiff's claims are typical of the claims of the Class Members because, *inter alia,* all Class Members have been deceived or were likely to be deceived by Defendant's false and misleading marketing claims and representations and material omissions about the Full Comprehensive Packages in the manner herein alleged. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all Class Members.

14
15
16
17

48.   Adequacy: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

18
19
20
21
22
23
24
25
26
27
28

49.   Superiority: The nature of this action and the nature of the laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class Members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class Members and the general public would not likely recover, or would not likely have the chance to recover, damages and/or restitution, or receive injunctive relief, and Defendant will, and will continue to, retain the proceeds of its fraudulent and deceptive misdeeds.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FIRST CAUSE OF ACTION

## VIOLATION OF UNFAIR COMPETITION LAW ("UCL")
### California Business & Professions Code § 17200, *et seq.*

50.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

51.     The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

52.     Plaintiff has standing to pursue this claim because Plaintiff has suffered injury-in-fact and have lost money or property as a result of Defendant's unlawful, unfair, and fraudulent actions. Specifically, Plaintiff purchased the Full Comprehensive Insurance Package from Defendant for his own personal consumption / automobile coverage. In doing so, Plaintiff relied upon the false representations and material omissions that the Full Comprehensive Package was a full coverage insurance product, including "collision insurance" for both of their vehicles, when in fact it was not; the 2012 Lexus did not have collision coverage. Plaintiff spent money in the transaction that he otherwise would not have had he known Defendant's representations about the policy were false.

### *"Unfair" Prong*

53.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

54.     Defendant's conduct constitutes an "unfair" business practice because, as alleged, Defendant engaged in a coordinated campaign that mislead consumers into believing that by purchasing a "Full Comprehensive Package," they were receiving full coverage on their automobiles.

CLASS ACTION COMPLAINT

1    55.    Defendant's conduct harms the interests of consumers and market

2    competition. There is no valid justification for Defendant's conduct.

3    ***"Fraudulent" Prong***

4    56.    A business act or practice is "fraudulent" under the UCL if it is likely to

5    deceive members of the consuming public.

6    57.    Defendant engaged in a fraudulent business practice by knowingly

7    representing to consumers that the Full Comprehensive Package included collision

8    insurance. By failing to disclose the truth about the policy, Defendant gained an improper

9    competitive edge in the auto insurance market and misled Plaintiff and the proposed Class

10   into purchasing less coverage than they desired. Defendant's practice deceived Plaintiff

11   and is highly likely to, and does in fact, deceive members of the consuming public who

12   purchased the Products in reliance on their advertised composition. Such practice is devoid

13   of utility and functions only to maximize Defendant's profits at the expense of the

14   consuming public.  Any benefit gained by Defendant's practice is far outweighed by the

15   gravity of harm to Plaintiff and the Class who lost money or property by paying for the

16   inferior insurance products.

17   ***"Unlawful" Prong***

18   58.    A business act or practice is "unlawful" under the UCL if it violates any other

19   law or regulation.

20   59.    Defendant's actions, as alleged herein, constitute illegal and unlawful

21   practices committed in violation of California Insurance Code Sections 780:

22           An insurer or officer or agent thereof, or an insurance broker or solicitor
23           shall not cause or permit to be issued, circulated or used, any statement
             that is known, or should have been known, to be a misrepresentation of
24           the following:

25           (a) The terms of a policy issued by the insurer or sought to be negotiated
26           by the person making or permitting the misrepresentation.
             (b) The benefits or privileges promised thereunder.
27           (c) The future dividends payable thereunder.

28

1   *See* California Insurance Code Section 780.

2   60.   Defendant's actions, as alleged herein, also constitute illegal and unlawful

3   practices committed in violation of California Insurance Code Sections 790.03:

4   The following are hereby defined as unfair methods of competition and
    unfair and deceptive acts or practices in the business of insurance.

5   (a) ***Making,*** issuing, circulating, or causing to be made, issued or

6   circulated, ***any*** estimate, illustration, circular, or ***statement
    misrepresenting the terms of any policy*** issued or ***to be issued*** or

7   the benefits or advantages promised thereby or the dividends or

8   share of the surplus to be received thereon, or making any false or
    misleading statement as to the dividends or share of surplus

9   previously paid on similar policies, or making any misleading

10  representation or any misrepresentation as to the financial condition
    of any insurer, or as to the legal reserve system upon which any life

11  insurer operates, or ***using any name or title of any policy or class

12  of policies misrepresenting the true nature thereof***, or making any
    misrepresentation to any policyholder insured in any company for

13  the purpose of inducing or tending to induce the policyholder to

14  lapse, forfeit, or surrender his or her insurance.

15  *See* California Insurance Code Section 790.03

16  61.   Particularly, Defendant has unlawfully marketed and advertised and sold the

17  "Full Comprehensive Package" insurance policy as a full coverage insurance product and

18  has failed to provide true "apples to apples" quotes to prospective customers who contact

19  GEICO over the phone. Defendant knowingly combined the words "Comprehensive" with

20  "Full" and "Package" to confuse and mislead customers into believing they were receiving

21  full insurance coverage, including collision insurance, when in fact they received an

22  inferior policy with only comprehensive and liability insurance.

23  62.   Each of Defendant's unfair, fraudulent, and unlawful practices enumerated

24  above was the direct and proximate cause of financial injury to Plaintiff and the Class.

25  Defendant has unjustly benefitted as a result of its wrongful conduct. Plaintiff and Class

26  Members are accordingly entitled to have Defendant disgorge profits and restore to

27  Plaintiff and Class Members all monies wrongfully obtained by Defendant as a result of

28  the conduct as alleged herein.

CLASS ACTION COMPLAINT

1

2

3

**SECOND CAUSE OF ACTION**

**VIOLATION OF CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**California Civil Code § 1750, *et seq.***

4       63.    Plaintiff repeats and re-alleges the allegations contained in every preceding

5    paragraph as if fully set forth herein.

6       64.    As alleged herein, Plaintiff has standing to pursue this claim because Plaintiff

7    has suffered injury-in-fact and has lost money or property as a result of Defendant's

8    unlawful, unfair, and fraudulent actions. Specifically, Plaintiff purchased the Full

9    Comprehensive Package insurance policy for his own personal consumption. In doing so,

10   Plaintiff relied upon the false representations that the Full Comprehensive Package

11   provided collision insurance; and further relied upon GEICO's promise to provide Plaintiff

12   an "Apples to Apples" comparison to his existing insurance policy, which did in fact

13   provide collision coverage for the 2012 Lexus. Plaintiff expended money in the transaction

14   that he otherwise would not have, had he known Defendant's representations and

15   advertising claims were false.

16      65.    The Consumer Legal Remedies Act ("CLRA") was enacted to protect

17   consumers against unfair and deceptive business practices. The CLRA applies to

18   Defendant's acts and practices because the Act covers transactions involving the sale of

19   goods or services to consumers. Auto insurance, unlike life insurance, is a service because

20   it is sold incident to providing repairs to a customers' chattel, in this case, the Plaintiff's

21   vehicle.

22      66.    Plaintiff and the members of the Class are "consumers" within the meaning

23   of Section 1761(d) of the California Civil Code, and they engaged in "transactions" within

24   the meaning of Sections 1761(e) and 1770 of the California Civil Code, including the

25   purchases of the Products.

26      67.    Defendant is a "person" under Cal. Civ. Code § 1761(c).

27      68.    The Full Comprehensive Packages are "services" under Cal. Civ. Code

28   § 1761(b).

69.     Defendant's unfair and deceptive business practices were intended to and did result in the sale of the Full Comprehensive Packages.

70.     Defendant violated the CLRA by engaging in the following unfair and deceptive acts and practices:

> § 1770(a)(5) – Representing that [the Full Comprehensive Packages have] . . . characteristics . . . which [they do] not have . . .
> § 1770(a)(9) – Advertising goods or services with intent not to sell them as advertised.

71.     If Plaintiff and the Class Members had known the "Full Comprehensive Package" insurance policy failed to provide full coverage, Plaintiff would not have purchased it and/or in the alternative would not have paid the price he agreed to pay for the inferior policy

72.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class Members suffered injury and damages in an amount to be determined at trial.

73.     On information and belief, Defendant's actions were willful, wanton, and fraudulent.

74.     On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of the misleading statements and material omissions regarding the Full Comprehensive Package products.

75.     Plaintiff has concurrently filed the declaration of venue required by Civil Code § 1780(d) with this complaint.

76.     On February 11, 2020, Plaintiff, through counsel, sent a CLRA demand letter to Defendant that provided notice of Defendant's violation of the CLRA and demanded Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. If Defendant does not respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within

1   30 days of the date of written notice pursuant to § 1782, Plaintiff will amend this complaint
2   to seek actual, punitive, and statutory damages, as appropriate against Defendant.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

77.   Plaintiff hereby repeats and re-alleges all preceding paragraphs and incorporates the same as though fully set forth herein.

78.   Plaintiff and the proposed class called GEICO seeking to purchase full coverage insurance policies. GEICO represented the Full Comprehensive Package as a full coverage product. Plaintiff and members of the proposed class agreed to the terms of purchase over the phone, provided their payment card information and purchased the Full Comprehensive Packages. As alleged herein, GEICO instead delivered an inferior insurance product.

79.   Furthermore, Defendant was also under an implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff and the Class members' rights and benefits intended under the contract. Defendant breach the implied covenant of good faith and fair dealing by denying coverage under an insurance policy that was intended to include collision insurance. To the extent Defendant was entitled to any discretion regarding what was included in the coverage, Defendant exercised such discretion in bad faith in failing to provide an actually "full" and "comprehensive" coverage that included collision coverage.

80.   Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed under the terms and conditions of the contracts, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

81.   As a direct and proximate result of these breaches, Plaintiff was and continue to be damaged in an amount according to proof.

CLASS ACTION COMPLAINT

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

82.     Defendant was also unjustly enriched at the expense of Plaintiff and the proposed Class who are therefore entitled to equitable restitution and disgorgement of profits obtained by the Defendant. Defendant received a benefit that was unjustly retained at the expense of the Plaintiff and the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays on behalf of himself and all others similarly situated, for judgment against Defendant as follows:

A.   Certifying the Class as requested herein, appointing Plaintiff as Class Representatives, and appointing his counsel as Class Counsel;

B.   Awarding monetary damages and punitive damages;

C.   Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth above;

D.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.   Ordering Defendant to engage in a corrective advertising campaign and other public injunctive relief;

F.   Awarding Plaintiff and Class Members their costs and expenses incurred in the action, including reasonable attorney's fees under the contract, relevant statutes, and Code of Civil Procedure §1021.5; and

G.   Providing such further relief as may be just and proper.

CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff demands a trial by jury of all claims presented herein so triable.

3

4    Dated: February 11, 2020                              **CARLSON LYNCH, LLP**

5

6                                                           */s/ Todd D. Carpenter*

7                                                          Todd D. Carpenter (CA 234464)
                                                           (Eddie) Jae K. Kim (CA 236805)
8                                                          Scott G. Braden (CA 305051)
                                                           1350 Columbia St. Ste. 603
9                                                          San Diego, CA 92101
                                                           Tel: (619) 762-1900
10                                                         Fax: (619) 756-6990
                                                           tcarpenter@carlsonlynch.com
11                                                         ekim@carlsonlynch.com
                                                           sbraden@carlsonlynch.com

12                                                         *Attorneys for Plaintiff and the Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT