**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
(Eddie) Jae K. Kim (CA 236805)
ekim@carlsonlynch.com
Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
1350 Columbia St. Ste. 603
San Diego, California 92101
Tel:   (619) 762-1900
Fax:   (619) 756-6991

*Attorneys for Plaintiff*
*and the Proposed Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHRAN DAVID ALAEI, an individual, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO), a Delaware corporation; GEICO GENERAL INSURANCE COMPANY, a Maryland corporation; and DOES 1 to 10,<br><br>Defendants. | Case No. 3:20-cv-00262-L-WVG<br><br>**OPPOSITION TO MOTIONS TO DISMISS AND STRIKE**<br><br>NO ORAL ARGUMENT PURSUANT TO LOCAL RULES<br><br>Judge:   Hon. M. James Lorenz<br>Room:   5B |

# TABLE OF CONTENTS

                                                                                           **Page**

I.      Introduction............................................................................................1

II.     Relevant Background ............................................................................3

        A.    GEICO's Systematic Fraud To Sell Its "Full Comprehensive Package"
              Insurance On Unsuspecting Customers Seeking Full Coverage
              Insurance ...................................................................................3

        B.    Plaintiff's Experience .................................................................5

III.    Legal Standard .....................................................................................6

IV.     Argument .............................................................................................7

        A.    Plaintiff's UCL Claims Seeking Restitution Are Not Limited To The
              Price to Value Method and, In Any Event, Defendant's Argument Is
              Premature..................................................................................7

        B.    Defendants' Motion to Strike Is Duplicative of Its 12(b)(6) Challenge,
              Is Premature, and Should Be Denied ........................................14

        C.    Defendants Do Not Substantively Challenge Plaintiff's Claims Under
              the UCL, Which Are Meritorious, And Therefore Waive Such
              Challenge................................................................................14

        D.    Plaintiff States a Claim for Formation and Breach of Oral Contract....15

        E.    Plaintiff States Breach of the Implied Covenant of Good Faith and Fair
              Dealing ..................................................................................18

        F.    Contractual Reformation is Available to Plaintiff and the Class.............20

        G.    Plaintiff States a Viable Claim for Unjust Enrichment............................21

V.      CONCLUSION .....................................................................................24

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

**Federal Cases**

*Aguilar v. Boulder Brands, Inc.*,
  No. 12CV01862 BTM BGS, 2013 WL 2481549 (S.D. Cal. June 10, 2013)............18

*Architectureart, LLC v. City of San Diego*,
  No. 15-cv-1592-BAS-NLS, 2016 WL 1077124 (S.D. Cal. Mar. 18, 2016)..14, 15, 17

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015)...........................................21

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013)........................................11

*Azimpour v. Sears, Roebuck & Co.*,
  No. 15-cv-2798-JLS (WVG), 2017 WL 1496255 (S.D. Cal. Apr. 26, 2017) ..........13

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ..................................22

*Buckley v. Cracchiolo*,
  No. 2:13-CV-4609-CAS PJW, 2014 WL 545751 (C.D. Cal. Feb. 7, 2014) ............16

*Burdick v. Union Sec. Ins. Co.*,
  No. CV 07-4028 ABC (JCX), 2009 WL 6541608 (C.D. Cal. Apr. 2, 2009) ...........20

*Chase v. Hobby Lobby Stores, Inc.*,
  No. 17-CV-00881-GPC-BLM, 2017 WL 4358146 (S.D. Cal. Oct. 2, 2017)....2, 4, 5, 12

*Chowning v. Kohl's Dep't Stores, Inc.*,
  No. CV1508673RGKSPX, 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ...............9

*Dion v. Fulton Friedman & Gullace LLP*,
  No. 11-2727 SC, 2012 WL 160221 (N.D. Cal. Jan. 17, 2012)..................14

*Fulford v. Logitech, Inc.*,
  No. C-08-2041 MMC, 2009 WL 1299088 (N.D. Cal. May 8, 2009).....................8, 9

*Haley v. Macy's, Inc.*,
  263 F. Supp. 3d 819 (N.D. Cal. 2017) .................................12

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013)..........................................2, 8, 9

*In re Bennett*,
  298 F.3d 1059 (9th Cir. 2002)..........................................20

*Jacobo v. Ross Stores, Inc.*,
  No. CV-15-04701-MWF-AGR, 2016 WL 3482041 (C.D. Cal. Feb. 23, 2016)....9, 13

*John v. AM Retail Grp., Inc.*,
  No. 17CV727-JAH (BGS), 2018 WL 1400718 (S.D. Cal. Mar. 20, 2018)..............13

**Federal Cases (cont.)**

*Johns v. Bayer Corp.*,
   No. 09–CV–1935–AJB DHB, 2012 WL 1520030 (S.D. Cal. Apr. 30, 2012).....10, 11

*Le v. Kohls Dept. Stores, Inc.*,
   160 F. Supp. 3d 1096 (E.D. Wis. 2016)........................................................11, 12, 22

*Lloyd v. Navy Fed. Credit Union*,
   No. 17-cv-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018)...............7

*Montemayor v. GC Servs. LP*,
   302 F.R.D. 581 (S.D. Cal. 2014)...............................................................................7

*Potter v. Chevron Prod. Co.*,
   No. 17-CV-06689-PJH, 2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ..................22

*Professor Brainstorm, LLC v. Aronowitz*,
   No. CV0905644RGKSSX, 2009 WL 10675891 (C.D. Cal. Dec. 8, 2009)...............22

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015)..............................................................................7, 8

*Rosales v. FitFlop USA, LLC*,
   882 F. Supp. 2d 1168 (S.D. Cal. 2012).................................................................7, 14

*Russell v. Kohl's Dep't Stores, Inc.*,
   No. EDCV151143RGKSPX, 2015 WL 12781206 (C.D. Cal. Oct. 6, 2015)........9, 12

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983)...................................................................................7

*Spann v. J.C. Penney Corp.*,
   No. SA CV 12-0215 FMO, 2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) ..........9, 13

*Stathakos v. Columbia Sportswear Co.*,
   No. 15-CV-04543-YGR, 2016 WL 1730001 (N.D. Cal. May 2, 2016) ...................13

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011)..................................................................................8

*TSI USA LLC v. Uber Techs., Inc.*,
   No. 17-CV-03536-HSG, 2018 WL 4638726 (N.D. Cal. Sept. 25, 2018).................22

*Weddington v. United Nat. Ins. Co.*, No. C,
   07-1733 SBA, 2008 WL 590512 (N.D. Cal. Feb. 29, 2008) ...................................19

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008).............................................................................14, 18

*Yeiser Research & Dev. LLC v. Teknor Apex Co.*,
   281 F. Supp. 3d 1021 (S.D. Cal. 2017).....................................................................22

**State Cases**

*Alford v. Bello,*
  130 Cal.App.2d 291 (1955) ............................................................. 18

*C9 Ventures v. SVC-W., L.P.,*
  202 Cal. App. 4th 1483 (2012) ......................................................... 2

*Coles v. Glaser,*
  2 Cal. App. 5th 384 (2016) ............................................................ 17

*Colgan,*
  38 Cal. Rptr. 3d at .................................................................. 11

*Dutton Dredge Co. v. U.S. Fidelity & Guaranty Co.,*
  136 Cal. App. 574, 29 P.2d 316 (1934) ............................................... 16

*Guipre v. Kurt Hitke & Co.,*
  109 Cal. App. 2d 7 (1952) ....................................................... 15, 16

*In re Tobacco Cases II ("Tobacco Cases II"),*
  240 Cal. App. 4th 779 (2015) ..................................................1, 10, 11

*In re Vioxx Class Cases,*
  180 Cal. App. 4th 116 (2009) ....................................................... 11

*Kwikset Corp v. Superior Court,*
  51 Cal. 4th 310 (2011) ............................................................... 9

*Lauriedale Associates, Ltd. v. Wilson,*
  7 Cal. App. 4th 1439 (1992) ......................................................... 23

*McBride v. Boughton,*
  123 Cal. App. 4th 379 (2004) ........................................................ 23

*Melchior v. New Line Productions, Inc.,*
  106 Cal. App. 4th 779 (2003) ........................................................ 22

*Rosenthal v. Great Western Fin. Securities Corp.,*
  14 Cal.4th 394 (1996) ............................................................... 20

*Rutherford Holdings, LLC v. Plaza Del Rey,*
  223 Cal. App. 4th 221 (2014) ........................................................ 21

*Thrifty Payless, Inc. v. The Americana at Brand, LLC,*
  218 Cal. App. 4th 1230 (2013) ....................................................... 18

*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.,*
  50 Cal. 4th 913 (2010) .............................................................. 23

**State Statutes**

Cal. Bus. & Prof. Code § 17203 ...................................................................12

Cal. Civ. Code § 1622 .................................................................................15

Cal. Civ. Code § 1624 .................................................................................15

Cal. Civ. Code § 3548 .................................................................................18

Cal. Civil Code § 3399 ...............................................................................20

Cal. Ins. Code § 780 ...................................................................................14

Cal. Ins. Code § 790.03 ..............................................................................14

**Federal Rules**

Fed. R. Civ. P. 8(d)(2).................................................................................21

Fed. R. Civ. P. 12(f)................................................................................7, 14

# I.    Introduction

GEICO[1] attempts to evade responsibility for its systematic and heinous bait and switch marketing scheme relating to the sale of auto insurance throughout California. Intentionally capitalizing on an industry-created misnomer product called "comprehensive" insurance which is not in fact comprehensive auto insurance under any reasonable understanding of the term, along with the fact that the overwhelming majority of Americans adults misunderstand "comprehensive" insurance to be a full and complete package that includes "collision" coverage, GIECO set forth a company-wide internal policy to market and push its "Full Comprehensive Package" onto prospective customers by misleading them into believing that it includes collision coverage.  This deception happens at the time of signing up customers who want new insurance or are shopping for comparable insurance to the one they currently have.  Often, the agreement for this Full Comprehensive Package insurance is made on the spot, long before the any written terms are later mailed to the customers.

In their motion to dismiss and strike, GEICO asserts that it is permitted to engage is its uniform, widespread deception, and that customers are not permitted to seek restitution for the overpayment for a misrepresented, inferior product.   In sum, Defendants argue that even though Plaintiff bargained for "A" and Defendants provided "B", Plaintiff has suffered no injury; in spite of the fact that "A" is different from "B" and Defendants fraudulently induced Plaintiff to spend his money by advertising and affirming Plaintiff was receiving "A".   This argument, which is based on what is commonly known as the price to value method (or cost minus value method), cannot form the basis for a dismissal on the pleadings, and has been rejected over and over again by California courts as the purported sole means for calculating restitution on a UCL claim. *See, e.g., In re Tobacco Cases II* ("*Tobacco Cases II*"), 240 Cal. App. 4th 779, 792 (2015)

---

[1] Defendants Government Employees Insurance Company (GEICO) and GEICO General Insurance Company are collectively referred to herein as "GEICO" or "Defendants."

(the difference between the price paid and actual value received is "not … the exclusive measure of restitution potentially available in a UCL case.")

Contrary to Defendants' arguments, Plaintiff's allegations sufficiently support his claims for restitution under the UCL, breach of contract, breach of the covenant of good faith and fair dealing and unjust enrichment.[2]  During the phone call on August 23, 2017, Defendants' agent's representation that the "Full Comprehensive Package" insurance Plaintiff would purchase included collision coverage sufficiently and materially induced Plaintiff to switch to GEICO.  ¶¶ 2, 11, 14, 52, 64, 71.[3]  Upon acceptance of Plaintiff's premium payment over the phone, an oral contract was formed.  *See C9 Ventures v. SVC-W., L.P.*, 202 Cal. App. 4th 1483, 1493 (2012).  Plaintiff specifically alleges he would not have switched his auto insurance carrier to GEICO but for the induced belief that the GEICO policy included collision coverage.  *See, e.g.,* ¶¶ 52, 64, 71.  Under relevant Ninth Circuit authority case law, this is sufficient to state a UCL claim for restitution.  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL … because he has suffered an economic injury.").  GEICO breached the oral contract and consummated its fraud on October 13, 2018, when it refused to provide coverage for Plaintiff's collision in his Lexus RX 350.  ¶¶ 13-14.  Defendants' arguments against Plaintiff's UCL and breach of contract/covenant claims really go to the viability of Plaintiff's damages model, which is not a proper basis for a motion to dismiss. *See Chase v. Hobby Lobby Stores, Inc.*, No. 17-CV-00881-GPC-BLM, 2017 WL 4358146, at *10 (S.D. Cal. Oct. 2, 2017) (attempting to define parameters of a restitution claim was premature at the to dismiss stage and were "issues for another day.").

Importantly, the existence of the update to the "GEICO Sales Training and Performance" guide (the "Update" and "Guide," respectively), and the confidential

---

[2] Plaintiff concedes and does not dispute Defendants' challenge to Plaintiff's cause of action under the CLRA.

[3] All further citations to "¶ __" are to the Complaint unless otherwise indicated.

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

source referenced in ¶ 32, are profoundly significant evidence of Defendants' intent to defraud customers.  ¶¶ 31-42.  If Defendants' contentions presented an accurate picture of the law, no consumer case could ever be brought where a plaintiff received something of admittedly *some* value though less than what the plaintiff bargain for.  Bait and switch schemes would have no remedy and scams like Defendants' would go unchecked. Indeed, fraudsters would be effectively immunized so long as they could point to some value that the consumer purportedly received.

Additionally, Defendants do not substantively challenge any substantial part of Plaintiff's UCL claims, which are meritorious, and instead only (prematurely) attack the viability of Plaintiff's remedy.  Accordingly, any further substantive UCL challenge is waived.  Plaintiff's cause of action for unjust enrichment is also permissible because Plaintiff *has* adequately alleged a right to restitution, despite simultaneously pleading breach of contract

## II.    Relevant Background

**A.    GEICO's Systematic Fraud To Sell Its "Full Comprehensive Package" Insurance On Unsuspecting Customers Seeking Full Coverage Insurance**

GEICO is the second largest auto insurer in the United States, after State Farm. As of 2017, GEICO provided auto insurance coverage for more than 24 million motor vehicles owned by more than 15 million policy holders. GEICO writes private passenger automobile insurance in all 50 U.S. states, including California.  GEICO primarily sells policies directly to the consumer[4] over the phone, through its website, and through local agents, called GEICO Field Representatives. ¶ 15.  GEICO's trademark marketing slogan "15 minutes could save you 15% or more on car insurance," has become a household phrase in America as a result of GEICO's saturation-level volume of marketing.  ¶ 17. GEICO's employs a "direct to consumer" business model such that the "15%" customers are invited to save represents pass-on savings GEICO bypasses by forgoing brokers' commissions as compared to the customer's same insurance coverage with a different

---

[4] *See, e.g.,* https://www.geico.com/information/aboutinsurance/auto/geico-business-model/

carrier. ¶ 18. Accordingly, the vast majority of GEICO's policies are sold over the phone by Field Representatives and GEICO retains exclusive control over its sales narrative and the marketing tactics employed by these representatives to convince consumers to purchase insurance. ¶ 21.

When consumers contact GEICO seeking an "apples to apples" comparison of their existing full-coverage insurance policy to an identical GEICO policy, GEICO would, instead, offer the consumer a "Full Comprehensive Package" insurance policy, which did not provide collision insurance for vehicles that the consumer was not under a legal and/or contractual obligation to insure with collision insurance. ¶ 27. GEICO intentionally confused and misled consumers, including Plaintiff, by using a combination of the words "full", "comprehensive" and "package" so as to lead them to believe the policy amounted to a "full coverage" policy that included collision insurance. ¶ 28. Defendants are keenly aware of this consumer confusion and have weaponized it for economic advantage. *Id*. By failing to actually provide collision insurance, GEICO, in turn, was able to deliver on its promised 15% savings on the prospective customer's auto insurance premiums, which became less expensive than competitors' because they provided less coverage. ¶ 30.

Plaintiff alleges that GEICO employed this tactic by training and encouraging its Field Representatives to push the "Full Comprehensive Package" insurance product on unsuspecting customers who presented to GEICO for a rate quote with a vehicle for which they were not legally or contractually obligated to obtain collision insurance. ¶ 31. The Field Representatives, in providing the "apples to apples" quotes for prospective customers, would market the "Full Comprehensive Package" as a full coverage product, at a substantial discount. *Id*. Based upon information from a confidential inside source, Plaintiff alleges that GEICO has bound thousands of policies in California using this fraudulent practice. ¶ 32. However, after dozens of consumers contacted GEICO complaining that their insurance policy did not have the collision coverage that they believed they were purchasing over the phone, the Field Representatives became increasingly uncomfortable with the practice and initiated an internal message board topic

to voice their well-founded concerns that the practice was fraudulent and misleading. ¶¶ 33-34.

At some point in mid-2019, following Plaintiff's experience (discussed below), in response to customer complaints and internal outcry by Field Representatives, GEICO attempted to issue a correction by updating the "GEICO Sales Training and Performance" guide. ¶ 36; *see* Compl., Ex. A (GEICO Internal Memorandum, a/k/a the Update). The Update to the Guide functions as an admission and acknowledgement by GEICO of its wrongdoing. ¶ 37. It states that the update became necessary because of multiple consumer complaints and the internal outcry of the Field Representatives ("We have seen some customer complaints for this … This change was a direct result of your feedback."). ¶ 38. However, the Update simply perpetuates the fraud by instructing Field Representatives to only disclose that the "comprehensive package" does not include collision coverage until ***after*** the customer has agreed to purchase the inferior policy. ¶ 42. As a result of Defendants' fraud, Plaintiff and the Class were misled by GEICO and purchased insurance products that were inferior to the coverage they believed they were purchasing. ¶ 43.

**B.    Plaintiff's Experience**

On August 23, 2017, Plaintiff called GEICO and requested and received an "apples to apples" quote for two vehicles, a 2012 Lexus RX350 (owned) and a 2016 Lexus ES350 (leased). At the time, both vehicles were insured by Esurance with "full coverage," which included both liability *and collision* coverage. ¶ 10. During the telephone conversation with Defendants' agent, Plaintiff notified the agent that his coverage with Esurance included collision on both vehicles and stated that he wanted to know if he could save money on the *same* coverage by switching to GEICO. ¶ 11. The agent presented Plaintiff with an offer of insurance called the "Full Comprehensive Package" and specified the premium, and coverage terms the Plaintiff sought, including collision coverage on the RX350. *Id.* As consistent with the agent's representations, Plaintiff understood the terms "full", "comprehensive" and "package" to mean that the policy included collision

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

insurance. ¶ 28. Plaintiff then provided the agent with his credit card information upon request, which the agent charged for payment. ¶ 11. Thus, there was offer, acceptance and performance at the time of the August 23, 2017 phone conversation. Defendants make no argument to contradict the timing of this contractual formation.

At no time before, during, or after the call was Plaintiff presented with a document that needed to be read, approved, signed or initialed before insurance services commenced or before the Defendants would charge the Plaintiff's credit card. At no time subsequent to the transaction was Plaintiff ever required to review and confirm the terms of the agreement in order to receive benefits under the policy. This lack of documentation of what Defendants now claim are limitations in the Plaintiff's policy are the result solely of Defendants' own business practices, which, as Plaintiff alleges, are intentional and by design. ¶¶ 21-30. Defendants could have easily emailed or mailed the contract and required Plaintiff to review and/or sign it (digitally and/or on paper) prior to the activation of coverage, as is commonplace with other auto insurers. This prudent procedure protects the insured and insurer. However, Defendants made no such election. As a result of Defendants' inducements Plaintiff canceled his existing (full) coverage and did not seek full coverage elsewhere.

Thereafter, on October 13, 2018, Plaintiff was involved in a collision and Defendants denied his claim for collision coverage. ¶¶ 13-14. Plaintiff brought this class action challenging Defendants' systematic, fraudulent marketing, advertising and sales of its "Full Comprehensive Package" on behalf of the *thousands* of customers it has duped with this practice in California. ¶ 32.

### III. Legal Standard

In ruling on a Rule 12(b)(6) motion, the court must accept as true the well-plead allegations and construe "those allegations in the light most favorable to the plaintiff."

*Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 WL 1757609, at *4 (S.D. Cal. Apr. 12, 2018).[5]

Rule 12(f) states that: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "[C]ourts generally grant a motion to strike only where 'it is clear that the matter to be stricken could have ***no possible bearing*** on the subject matter of the litigation.'" *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (emphasis added); *accord Montemayor v. GC Servs. LP*, 302 F.R.D. 581, 587 (S.D. Cal. 2014).

## IV. Argument

### A. Plaintiff's UCL Claims Seeking Restitution Are Not Limited To The Price to Value Method and, In Any Event, Defendant's Argument Is Premature

Defendants' argument that restitution is unavailable to Plaintiff and the Class is based on a misrepresentation of Plaintiff's allegations and a misinterpretation of relevant case law. To the contrary, Plaintiff adequately alleges claims for monetary restitution under the UCL.

Plaintiff alleged that GEICO fraudulently induced him to purchase auto insurance over the telephone based on the representation that the insurance included collision coverage and then denied such coverage. ¶ 13. Plaintiff would not have purchased GEICO insurance in the absence of this misrepresentation or would not have paid the agreed price for the inferior policy. ¶¶ 52, 71. Under that theory alone, Plaintiff's UCL claim for restitution must survive Defendant's motion. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) ("[I]n effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a

---

[5] Additionally, Plaintiff notes that Defendants' Motion is entirely fails to set forth any standard of review governing the bases for their motion under Rules 12(b)(6) and 12(f).

person sees it and bites, the defendant has caused an injury; restitution is the remedy.") (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011); *Hinojos*, 718 F.3d at 1107. Because Plaintiff has alleged actual harm, he is not limited to injunctive relief[6] under the UCL and may properly seek restitution.

The Ninth Circuit agreed in *Pulaski*: "[I]n calculating restitution under the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." The plaintiffs in *Pulaski* used Google's Adwords program, which allowed them to bid for advertisement placement on various websites of their choosing; Google, however, failed to inform the plaintiffs that their advertisements could appear on certain other websites that they had not authorized. *Id*. at 982-83. The plaintiffs were charged each time a consumer clicked on their advertisements—even those advertisements placed on websites that plaintiffs did not choose or know about. *Id*. at 983. Consequently, the plaintiffs sued Google under the UCL and FAL, proposing a measure of restitution based on "the difference between what [plaintiffs] actually paid and what they would have paid had Google informed them" of the undisclosed websites. *Id*. Admittedly, the *Pulanski* plaintiffs did gain some value from having their advertisement placed on the unauthorized websites, which prompted the district court to reject plaintiffs' measure of restitution because it did not account for the benefits that plaintiffs acquired. *Id*. at 984. However, the Ninth Circuit reversed, holding that "UCL and FAL restitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information." *Id*. at 989. Thus, the plaintiffs' proposed alternative method of restitution was sufficient for class certification purposes because it "measure[d] the monetary loss resulting from the particular injury alleged." *Id*. (internal citations omitted). As the Court explained, "[w]here plaintiffs are 'deceived by misrepresentations into making a

---

[6] Defendant explicitly concedes as to Plaintiff's UCL claim for injunctive relief. Mot. at 1. As long as Plaintiff suffered financial harm, irrespective of whether Plaintiff could seek restitution directly from GEICO, he can still seek injunctive relief. *Fulford v. Logitech, Inc.*, No. C-08-2041 MMC, 2009 WL 1299088, at *1–2 (N.D. Cal. May 8, 2009).

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.'" *Id*. (citing *Kwikset Corp v. Superior Court*, 51 Cal. 4th 310 (2011)).

Here, restitution is available on a class-wide basis once Plaintiff makes the threshold showing of liability under the UCL. Though it need not be analyzed at this stage, Plaintiff and the Class will be entitled to restitution for the overage (i.e., premium) they paid attributable solely to Defendant's misrepresentation. In other words, in line with *Pulaski*, Plaintiff will show that he and the Class are entitled an amount equaling the difference between what was actually paid and what would have been paid had the consumer known the "Full Comprehensive Package" excluded collision coverage. This measure differs from the "price to value" (a/k/a "cost minus value") method because it isolates the amount that customers paid as a direct result of Defendants' fraud. *See Chowning v. Kohl's Dep't Stores, Inc.*, No. CV1508673RGKSPX, 2016 WL 1072129, at *5-6 (C.D. Cal. Mar. 15, 2016), aff'd, 735 F. App'x 924 (9th Cir. 2018), amended on denial of reh'g, 733 F. App'x 404 (9th Cir. 2018), and aff'd, 733 F. App'x 404 (9th Cir. 2018) (endorsing "[as] a viable measure of restitution … a price premium model in which an expert isolates the amount of the price attributable to the false representation."); *Jacobo v. Ross Stores, Inc.*, No. CV-15-04701-MWF-AGR, 2016 WL 3482041, at *7 (C.D. Cal. Feb. 23, 2016) ("The Court could, for example, award the difference between what the consumers paid for the products and what they would have paid [in the absence of the misrepresentation].") (citing *Hinojos*, 718 F.3d at 1105); *Russell v. Kohl's Dep't Stores, Inc.*, No. EDCV151143RGKSPX, 2015 WL 12781206, at *5 (C.D. Cal. Oct. 6, 2015) ("Plaintiffs here can rely on a measure of restitution similar to the one pursued by the plaintiff in Pulaski"); *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL 1526559, at *6-8 (C.D. Cal. Mar. 23, 2015) (recognizing three permissible measures of restitution: "rescission and refund," "transaction value," or "restitutionary disgorgement"). Here, as recognized in *Spann*, an acceptable measure of restitution [i.e.,

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

transaction value] would be a refund of the "excess amount that [plaintiff] paid as a result of [defendant's] deceptive practice." *Id*. at 7. Thus, the fact that the rate for Defendant's liability-only policy was approved by the Department of Insurance pursuant to Prop 103 is therefore a red herring,[7] as Plaintiff alleges that he would not have purchased insurance from Defendant absent the misrepresentation. ¶¶ 6, 11, 52, 64, 71.

Contrary to Defendants' contentions, it is well-established that the difference between the price paid and the value received (i.e., the price to value method) is not the only available measure of restitution. *See, e.g., Johns v. Bayer Corp.*, No. 09–CV–1935–AJB DHB, 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012) (finding that California cases did not "suggest that the difference in price paid and value received is the only proper measure of restitution"). Defendants argue, "Alaei cannot recover his premium payments as restitution because he admits that he got something of equal value in return: namely, his policy of "full comprehensive" coverage, including liability coverage. Mot. at 7 (citing ¶¶ 6, 11). However, Defendants blatantly ignore the crux of Plaintiff's claims: that he was fraudulently induced to purchase the "Full Comprehensive Package" under the pretext that it included collision coverage and would not have purchased insurance with Defendant otherwise. *See, e.g.,* ¶¶ 6, 11, 52, 64, 71. Likewise, Defendants' argument that Plaintiff is precluded from restitution "[because he] does not—and cannot—allege that the policy is worth less than he paid" (Mot. at 7) is incorrect and relevant case law has repeatedly rejected this argument against restitution, and particularly so at the pleadings stage.

Even the cases cited by Defendants acknowledge that the price to value method is not the exclusive method of calculating monetary restitution. Mot. at 7: *Tobacco Cases II*, 240 Cal. App. 4th 779, 792–93 (2015) (the difference between the price paid and actual value received is "not ... the exclusive measure of restitution potentially available in a

---

[7] *See* Mot. at 8 ("Alaei does not allege that GEICO charged him anything other than the approved rate for the policy he received").

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

UCL case.");[8] *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) ("The difference between what the plaintiff paid and the value of the plaintiff received is *a* proper method of restitution.") (emphasis added).[9]   In *Tobacco Cases II*, the court explained, "We agree that [cost minus value] does not set forth the exclusive measure of restitution potentially available in a UCL case.  It remains, however, that plaintiffs ha[ve] the burden of proving entitlement to an alternative measure of restitution proper under the circumstances."   *Id.* at 792.   In so holding, the court articulated an important distinction between the *availability* of alternative measures and the *viability* of alternative measures.  Put differently, while Plaintiff is allowed to advance alternative measures of restitution, not all such measures will ultimately prevail because "[t]he amount of restitution ordered under the UCL 'must be supported by substantial evidence.'"   *Id.* (quoting *Colgan*, 38 Cal. Rptr. 3d at 63).   The court clarified that the difference between the price paid and actual value received, as explicated in *In re Vioxx Class Cases*, is "not the exclusive measure of restitution potentially available in a UCL case."   *Id*. at 792.  Thus, the California Court of Appeal has definitively rejected the argument that cost minus value constitutes the exclusive measure of restitution under the UCL.

California district courts agree and permit broad discretion to fashion a restitution remedy as needed.  *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) (A Court awarding restitution under the California consumer protection laws has "very broad discretion to determine an appropriate remedy as long as it is supported by the evidence and is consistent with the purpose of restoring the plaintiff the amount that the defendant wrongfully acquired.").  In *Le v. Kohls Dept. Stores, Inc.*, 160 F. Supp. 3d 1096, 1103-04 (E.D. Wis. 2016), the court, analyzing California law, found that the failure to plead that

---

[8] Defendant cites *Tobacco Cases II* for the proposition that "a full refund is appropriate only 'when a product confers no benefit on consumers.'" Mot. at 7.  However, as discussed herein, Plaintiff theory of restitution does not necessarily seek a full refund and, in any event, any such challenge thereto is premature.

[9] *See also Johns*, 2012 WL 1520030, at *5 (stating that neither *Vioxx*, *Cortez*, "nor any other case ... suggest[s] that the difference in price paid and value received is *the only* proper measure of restitution.") (emphasis original).

a product was purchased at a price greater than its actual value was far from fatal to the claim. *Le*, 160 F. Supp. 3d at 1106. Moreover, in *Le*, the court emphasized the importance of a full trial record, the benefits of discovery, and a complete evidentiary record in determining the proper measure of restitution in a case. *Id.*; *see also Chase*, 2017 WL 4358146, at *10 (agreeing with *Le* and holding it was premature at the motion to dismiss stage to define the parameters of a restitution claim, as these were "issues for another day.").

Defendants ask the Court to endorse, *at the pleadings stage*, the "price to value" method as the singular method of calculating restitution. When confronted with the identical argument in *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 825 (N.D. Cal. 2017), the Northern District Court explained:

> Defendants argue that, as a matter of law, the proper measure of monetary restitution is the difference between what was paid and the value of what was received. Thus, Defendants argue, because "Plaintiffs do not allege that the items they purchased were damaged or otherwise worth less than what they paid for them," their allegations are insufficient to support a request for restitution.
>
> Yet this is but one method of calculating restitution. The Court has broad powers to enter "such orders or judgments ... as may be necessary to restore any person ... any money or property ... which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. Whether Plaintiffs can prove up the amount of restitution is a question better addressed at a later stage in the litigation.

(Internal citations omitted). Likewise, the Central District in *Russell*, 2015 WL 12781206, at *3, *5, held allegations similar to Plaintiff's sufficient to support a claim for restitution and rejected the same argument:

> Defendant posits that Plaintiffs' request for restitution fails because they have not alleged a discrepancy between the amount they paid and the value of the merchandise they received. Instead, the FAC only alleges that Defendant induced Plaintiffs to purchase merchandise by misrepresenting the nature and amount of price discounts. Therefore, Defendant contends, Plaintiffs have failed to plead sufficient facts to support a claim for relief under the exclusive measure of restitution. The Court disagrees. …
>
> While it remains to be seen whether [p]laintiffs can adduce sufficient evidence of a measurable amount of restitution, such an inquiry is premature at this early pleading stage. …

Even though Plaintiffs have not alleged that the price they paid exceeds the value of the merchandise they purchased, they have still alleged sufficient facts to support a claim for restitution under the UCL".

Additional support is abundant. *See Spann*, 2015 WL 1526559, at *4 ("[A]lthough California case law makes clear that [cost minus value] can be a measure of restitution, defendant has not cited, nor has the court found, any authority indicating that is the only way restitution can be calculated."); *Jacobo*, 2016 WL 3482041, at *7 ("remedy for the alleged misconduct is not limited to the difference between the value of the goods [p]laintiffs purchased and the price for those goods."); *Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543-YGR, 2016 WL 1730001, at *4 (N.D. Cal. May 2, 2016) (challenge to restitution methodology premature at motion to dismiss stage).

Thus, Plaintiff's UCL claim for restitution must survive the present Motion. Plaintiff alleges sufficient facts to support a cognizable legal theory for recovery, regardless of which theory of restitution he ultimately pursues. *See John v. AM Retail Grp., Inc.*, No. 17CV727-JAH (BGS), 2018 WL 1400718, at *8 (S.D. Cal. Mar. 20, 2018) ("Plaintiff is able to survive a Motion to Dismiss so long as sufficient facts are pled to support a cognizable legal theory for recovery, regardless of which theory he so chooses.") (citing *Azimpour v. Sears, Roebuck &Co.*, No. 15-cv-2798-JLS (WVG), 2017 WL 1496255, at *9 (S.D. Cal. Apr. 26, 2017). Whether Plaintiff has the substantial evidence to support that theory "is a premature determination at the pleading stage." *Id*. Importantly, discovery in this case has yet to begin, and the facts have yet to develop. Whether Plaintiff can prove a viable restitution model is not at issue. Rather, Plaintiff only is required to show that he is entitled to restitution based on the pleadings, whatever the ultimate calculation may be. Plaintiff has done just that here—he alleged that he would not have purchased insurance from GEICO had he known its representations regarding the inclusion of collision coverage in the "Full Comprehensive Package" were false or, alternatively, would not have paid the price he agreed to pay for the inferior policy. *See, e.g.*, ¶¶ 6, 11, 52, 64, 71. Nothing more is required at this stage. Moreover, the question of whether Plaintiff was fraudulently induced to believe that the "Full

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

Comprehensive Package" included collision coverage is a question of fact not appropriate for adjudication at this juncture. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 937 (9th Cir. 2008). Defendants' premature argument regarding the viability of restitution, as opposed to its availability, should be altogether rejected.

## B. Defendants' Motion to Strike Is Duplicative of Its 12(b)(6) Challenge, Is Premature, and Should Be Denied

Defendants' "alternative" motion to strike paragraph 62, lines 25-28, of the Complaint are entirely duplicative of its 12(b)(6) challenge to UCL restitution and should be denied for the same reasons set forth above. Defendants do not even attempt to delineate in their brief which arguments apply to the 12(f) motion and set forth no applicable standard of review, leaving the Court and Plaintiff to guess. *See Dion v. Fulton Friedman & Gullace LLP*, No. 11-2727 SC, 2012 WL 160221, at *3 (N.D. Cal. Jan. 17, 2012). Finally, the 12(f) motion is improper here where Plaintiff's claim for restitution is not a "redundant, immaterial, impertinent, or scandalous matter" and it has a clear "bearing on the subject matter of the litigation." Fed. R. Civ. P. 12(f); *Rosales*, 882 F. Supp. 2d at 1179.

## C. Defendants Do Not Substantively Challenge Plaintiff's Claims Under the UCL, Which Are Meritorious, And Therefore Waive Such Challenge

Plaintiff states claims under the "unlawful", "unfair" and "fraudulent" prongs of the UCL. ¶¶ 53-62. Defendants fail to challenge the substance of these claims, instead only attacking Plaintiff's right to restitution, and therefore waive any further contrary argument. *See Architectureart, LLC v. City of San Diego*, No. 15-cv-1592-BAS-NLS, 2016 WL 1077124, at *3 n.3 (S.D. Cal. Mar. 18, 2016) (arguments not raised "in the initial Motion to Dismiss . . . are waived") (collecting cases). Defendants further raise no challenge to Plaintiff's claimed violations of Cal. Ins. Code [sections] 780 and 790.03 as an independent basis for finding Defendants' conduct is unlawful. This claim, accordingly, must be allowed to proceed. *Id*.

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

### D. Plaintiff States a Claim for Formation and Breach of Oral Contract

Defendants argue for dismissal of Plaintiff's breach of contract claim but the lynchpin of their argument is based on an ultimate fact that has yet to be determined—that is, whether collision damage coverage was in fact part of the Parties' agreement. This is a cornerstone of Plaintiff's breach of contract claim and a question of fact to be proven at trial because the terms of the Parties' contract are in dispute, as well as what constitutes the operative contract.

As discussed above, Plaintiff telephoned GEICO in response to GEICO's ever-present advertisements that he could "15% or more" as compared to his current auto insurance. ¶¶ 10-11. Plaintiff spoke with a GEICO representative and requested an "apples to apples" quote based on his then-current insurance through Esurance, which, Plaintiff made clear, included collision coverage on both vehicles. *Id.* The agent prepared an offer based on the needs Plaintiff expressed (i.e., full coverage) and quoted a price for purchasing the Defendants' "Full Comprehensive Coverage Policy," which the agent informed Plaintiff would save him approximately $600 every six month compared to the same coverage he had with Esurance. *Id.* Plaintiff considered the offer and, based on Defendants' oral representations and the name "*Full Comprehensive Package*", accepted it by paying the quoted premium by credit card over the phone. ¶ 11. Upon payment, Defendants' agent informed Plaintiff that coverage was active immediately. Thus, at that moment, a contract was formed. *See Guipre v. Kurt Hitke & Co.*, 109 Cal. App. 2d 7, 14 (1952). Plaintiff had met his obligation to pay his first premium. There was no application to fill out, no forms to review and sign or initial, nothing at all remained. A binding contract had been created with Plaintiff's performance rendered. Plaintiff believed he had just purchased GEICO insurance as advertised, with collision coverage on both vehicles.

Cal. Civ. Code § 1622 provides "[a]ll contracts may be oral, except such as are specially required by statute to be in writing." Cal. Civ. Code § 1624, more commonly known as the Statue of Frauds, has no preclusive provision that applies to the contract in

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

this case. *See Dutton Dredge Co. v. U.S. Fidelity & Guaranty Co.*, 136 Cal. App. 574, 579, 29 P.2d 316 (1934) (holding that an oral contract for insurance coverage was not within the statute of frauds because it could be terminated at any time by either party, and did not by its terms extend beyond one year). Plaintiff thus rendered his performance by paying to activate the represented coverage, which he was informed became effectively immediately. At no time thereafter did Plaintiff ever miss a premium payment.

These facts are remarkably similar to *Buckley*, where the plaintiff asserted claims for, *inter* alia, breach of contract and breach of the implied covenant of good faith and fair dealing after he contacted by telephone an auto insurance company advertised by Costco to its members seeking full coverage, including collision, for two high-value vehicles, a Ferrari and Mercedes. *Buckley v. Cracchiolo*, No. 2:13-CV-4609-CAS PJW, 2014 WL 545751, at *1 (C.D. Cal. Feb. 7, 2014). Defendants brought a motion for summary judgment, arguing that summary judgment should be granted as to the breach of contract claim because a written policy was mailed to the plaintiff, along with associated declarations pages, stating that the policy did not include coverage for collision damage. The court disagreed, denying the motion, and explaining:

> The Court finds [defendants'] argument unpersuasive. As stated above, the gravamen of plaintiff's breach of contract claim is that he entered into an oral contract with defendants for insurance coverage, including collision and rental coverage. While oral contracts for insurance coverage are "unusual," they are valid and enforceable unless the Statute of Frauds applies. Here, plaintiff provides evidence that he requested collision coverage when he spoke to a representative after calling the 1–800 number provided to him by Costco … Additionally, plaintiff states that the representative presented him with an offer of insurance, which included rental and collision coverage, and that plaintiff accepted that offer. ***This evidence is sufficient to create a genuine dispute of material fact as to whether plaintiff entered into an oral contract for insurance coverage.*** Defendants' reference to written policy documents, and the insurance coverage set forth therein, is not responsive to plaintiff's assertion that an oral contract was formed.

*Id.* at *3 (emphasis added); *see also Guipre v. Kurt Hitke & Co.*, 109 Cal. App. 2d 7, 14-15 (1952) (enforcing oral insurance contract: "It is a matter of common knowledge and experience that …an oral application to such [insurance] agency is ordinarily considered accepted when approved by such agent.").

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

Notably, here, Defendants do not discuss in their Motion, or seek judicial notice of, the existence of any document signed, or even purportedly reviewed, by Plaintiff confirming his purchase of insurance that excluded collision coverage of the RX350—because there is no such document. Defendants do not offer a signed contract, a contract with Plaintiff's initials on any page, any emails from the Plaintiff confirming such terms, or even a digital signature. There is simply no document whatsoever that embodies the Plaintiff's confirmation of the Defendant's claimed terms, which are clearly contrary to common sense, Plaintiff's intentions, and Defendants' representations. Nor can Defendants properly attempt to make any such showing in the Reply Brief. *See Architectureart*, 2016 WL 1077124, at *3 n.3.

The *only* case Defendants cite in their two-paragraph challenge to the breach of contract claim is *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016), which involved breach of a written settlement agreement, i.e., a formal contract complete with signatures by the parties confirming they were familiar with the terms contained in the agreement prior to the commencement of performance. This is not what happened here, nor do Defendants even attempt to make any offering to the contrary. Defendants, as the offeror and party with superior bargaining power, were responsible for choosing the format of the contract and its execution. Defendants certainly had the opportunity to put the Parties' agreement in a writing and then require the Plaintiff to review and/or sign it contract prior to the commencement of coverage, but simply chose not to. Defendants instead jettisoned the need for Plaintiff to fill out an application, sign or review any form or document whatsoever. All Defendants required was a short phone conversation and the Plaintiff's credit card payment and the deal was done. During this single oral communication, Defendants represented the services they would provide to Plaintiff and offered those services for a specific price, whereupon Plaintiff accepted the Defendants' offer of specific services at a set price and provided Defendants with payment, completing the transaction. The duration of the interaction is not the measure of valid agreement formation. For instance, one need only raise a paddle at an auction to agree to purchase

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

a painting worth millions of dollars.  Thereafter the Plaintiff had a legal right to rely on the Defendants' representations of insurance and the contract created over the phone, as consistent with the well-known maxim, "the law has been obeyed." Cal. Civ. Code § 3548; *see, e.g., Alford v. Bello*, 130 Cal.App.2d 291, 294 (1955) ("It is presumed … that the law has been obeyed.").  This contract was breached by Defendants' unwillingness to honor its obligation to accept coverage for Plaintiff's collision on October 13, 2018.  ¶ 12.

Defendants' argument that Plaintiff "does not and cannot allege any failure of performance by GEICO" (Mot. at 5) is therefore plainly untrue, and Defendants' interpretation of paragraph 2 of the Complaint[10] is tortured at best and disingenuous at worst; Plaintiff clearly alleges what was represented to him and what he agreed to.  ¶¶ 2, 6, 11.  Ultimately, the terms of the contract, and indeed what agreement forms the basis of the operative contract, are questions of fact not appropriate for adjudication at this juncture.  Plaintiff has alleged material facts supporting the existence of a binding oral contract and those allegations must be taken as true at this point.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 937 (9th Cir. 2008); *Aguilar v. Boulder Brands, Inc.*, No. 12CV01862 BTM BGS, 2013 WL 2481549, at *1 (S.D. Cal. June 10, 2013).  If Defendants want to bring the same challenge on a motion for summary judgment, Plaintiff's allegations will be supported by exhibits and declarations are not required here.

## E. Plaintiff States Breach of the Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing "is read into contracts and functions as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013)

---

[10] Mot. at 5: "He [Plaintiff] alleges that GEICO offered and sold him a policy that did *not* include collision coverage for the 2012 Lexus."

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

(internal citation and quotations omitted). Defendants do not explicitly challenge Plaintiff's additional claim for breach of the implied covenant. ¶ 79; *see* Mot. at 5. As with the breach of contract claim, any such argument would hinge upon a matter of disputed fact, i.e., what were the terms of the contract.

Defendants make the unfounded presumption that the contract did not include collision coverage. However, as discussed above, the contract's terms were formed during the August 23, 2017 telephone call or, at the least, this is a question of material fact. Plaintiff was then lawfully entitled to rely upon that agreement and to expect GEICO would act in good faith in performing its obligations, including the provision of collision coverage for the RX350, as represented to Plaintiff during the offer, acceptance and payment.

Defendants' breach of good faith becomes exponentially more apparent when taking into account GEICO's Update to the Guide. *See* Compl., Ex. A. The Update is a clear admission by GEICO of its fraudulent sales practices in connection with the marketing and sales of its "Full Comprehensive Package." ¶ 37. The Update acknowledges complaints from customers and field representatives regarding the practice. ¶ 38. Amazingly, however, instead of calling for the abolition of the deceptive practice altogether, the Update simply instructs Field Reps to make the crucial disclosure ***after*** the customer has agreed to purchase the inferior policy. ¶ 44. GEICO has therefore acted, and continues to act, in abuse of the covenant in marketing and selling the "*Full Comprehensive Package*" insurance by capitalizing on and weaponizing the known widespread misconception among consumers, thereby frustrating Plaintiff's and other customer's rights to the intended benefits of the contracts.

Lastly, as with Plaintiff's breach of contract claim, Defendants' argument that it rendered performance is not only incorrect, but, at best, merely gives rise to a factual question which may not be determined on a motion to dismiss. *Weddington v. United Nat. Ins. Co.*, No. C 07-1733 SBA, 2008 WL 590512, at *4 (N.D. Cal. Feb. 29, 2008), aff'd, 346 F. App'x 224 (9th Cir. 2009) ("An insurer's breach of the covenant of good

faith and fair dealing is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent, and state of mind.") (internal citation and quotations omitted).

## F. Contractual Reformation is Available to Plaintiff and the Class

Reformation is available when a written contract does not truly express the intent of the parties due to (1) fraud, (2) mutual mistake, or (3) the mistake of one party, which the other party knew or suspected at the time of contracting. Cal. Civil Code § 3399; *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCX), 2009 WL 6541608, at *9 (C.D. Cal. Apr. 2, 2009). The availability of this additional remedy[11] further contradicts Defendants' claim that Plaintiff is not entitled to any monetary relief. *See* Mot. at 7. Here, reformation would mean reforming Plaintiff's and Class members' policies to include collision coverage and requiring Defendants' to make appropriate payments of previously denied claims.

In *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 421 (1996), the court stated that in instances where a party signed a contract but did so relying on prior representations, the remedy of reformation was available to reform the contract to reflect what the was previously represented:

> [W]here [the failure to familiarize one's self with the contents of a written contract prior to its execution], and perhaps negligence, is induced … by the false representations and fraud of the other party to the contract that its provisions are different from those set out, the courts, even in the absence of a fiduciary or confidential relationship between the parties, should reform, and in most cases have reformed, the instrument so as to cause it to speak the true agreement of the parties.

Critical to *Rosenthal*'s analysis was the fact that the party assented to the terms of the contract *before* having a chance to read them. *Id.* The facts here then make an even greater case for reformation because the Plaintiff *never executed or reviewed **any** document before contractual formation.* Thus, if reformation is available where a party,

---

[11] Though not explicitly requested in the Complaint, the remedy of contractual reformation is also available to Plaintiff and the Class. "So long as a party is entitled to relief, a trial court must grant such relief despite the absence of a formal demand in the party's pleadings." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir.2002).

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

while relying on the other's representations, fails to read a contract before signing it, it must also be available here where Plaintiff was never presented with any writing prior to commencing coverage and was reasonably induced into the agreement by Defendants' representations—that it included collision coverage, only to be subsequently denied. ¶¶ 13-14. Though unnecessary at this juncture, the existence of the Update and the confidential source referenced in ¶ 32 are more than sufficient evidence of Defendants' fraud and/or knowledge of Plaintiff's mistake to invoke reformation. ¶¶ 36-43. Thus, at a minimum, Plaintiff should be entitled to seek reformation of the contract so as to reflect his reasonable understanding of Defendants' obligations.

## G. Plaintiff States a Viable Claim for Unjust Enrichment

Defendants' argument against unjust enrichment is bootstrapped to their argument against restitution: "an unjust enrichment claim can survive only if the plaintiff pleads facts showing an entitlement to restitution …" Mot. at 8. As shown above, Plaintiff has done just this, and he thus properly pleads a cause of action for unjust enrichment premised on Defendants' fraud. Under the law of California and the Ninth Circuit, where a plaintiff alleges unjust enrichment, a court may interpret the cause of action as that of a quasi-contract claim seeking restitution. *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015). Additionally, relevant here, "[a] claim for restitution [i.e., unjust enrichment] is permitted even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (citation omitted); *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 of more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").

Here, Plaintiff's substantive allegations are not limited to mere breach of contract but are premised on Defendant's misleading, deceptive, and fraudulent conduct. *See, e.g.*, ¶¶ 1-6, 10-14, 27-43, 52, 54, 57, 61. In short, GEICO was unjustly enriched because it accepted Plaintiff's money he would not have spent in the absence of GEICO's misrepresentation regarding the inclusion of collision coverage in the "Full

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

Comprehensive Package." These allegations sufficiently demonstrate an unjust taking of Plaintiff's and Class members' money to support Plaintiff's unjust enrichment claim. ¶ 82. Moreover, Defendants apparently dispute what constitutes the operative contract between the Parties and by extension, the enforceability of that contract. *See* Mot. at 5. Ultimately, it is simply premature at this stage of the proceedings to determine whether the contract between the Parties covers the same subject matter as Plaintiff's unjust enrichment claim. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 943 (N.D. Cal. 2013) (motion to dismiss denied where "[i]t [was] premature for the Court to take a position on whether this action derives from the 'same subject matter' as the agreements such that a claim for unjust enrichment is unavailable.")[12]

Meanwhile, each of the cases Defendants rely on are readily distinguishable. In *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779 (2003) the basis for the unjust enrichment claim was conversion. *Id.* at 793. Because the conversion claim was preempted by the Copyright Act, the unjust enrichment claim was also preempted. *Id.* Moreover, the issue of whether the plaintiff could plead unjust enrichment under a quasi-contract theory was not before the court when ruling on the summary judgment motion. *Id.*; *see also Le*, 160 F. Supp. 3d at 1118 (explaining that *Melchior* is no longer good law following *Astiana*).

---

[12] Indeed, the vast majority of California courts permit simultaneous claims for breach of contract and unjust enrichment. *See Potter v. Chevron Prod. Co.*, No. 17-CV-06689-PJH, 2018 WL 4053448, at *7 (N.D. Cal. Aug. 24, 2018) (motion to dismiss breach of contract and unjust enrichment claims denied where "[p]laintiffs have met their burden [to plead unjust enrichment], based on the same allegations that support their breach of contract claim."); *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1054 (S.D. Cal. 2017) (breach of contract claim does not displace plaintiff's unjust enrichment claim); *Professor Brainstorm, LLC v. Aronowitz*, No. CV0905644RGKSSX, 2009 WL 10675891, at *3 (C.D. Cal. Dec. 8, 2009) ("It would be improper to exclude the quasi contract claim on the basis that it cannot co-exist alongside a contract remedy because the Court has yet to determine whether a contract remedy is available to Plaintiff."); *Abu-Lughod v. Calis*, No. CV 13-2792 DMG (RZX), 2015 WL 12646133, at *9 (C.D. Cal. Jan. 21, 2015) ("[d]efendants' motion for summary judgment as to the quasi-contract claim must fail for the same reasons as the breach of contract claim."); *TSI USA LLC v. Uber Techs., Inc.*, No. 17-CV-03536-HSG, 2018 WL 4638726, at *5 (N.D. Cal. Sept. 25, 2018) (unjust enrichment claim permitted despite concurrent breach of contract claim).

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

20cv0262

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) involved a claim for unjust enrichment by an unmarried man based on funds expended to support a child he later found out not to be his biological offspring. *Id.* at 382. The court denied unjust enrichment as against two "fundamental" public policies, neither of which is presented here: enforcing parents' obligations to support their children and protection of children's interest in a stable family relationship. *Id.* at 389.

Finally, *Lauriedale Associates, Ltd. v. Wilson*, 7 Cal. App. 4th 1439 (1992) involved a claim for unjust enrichment by a homeowners' association against its constituent residents after the HOA allegedly breached *its* fiduciary duties to those residents by failing to collect adequate assessments to maintain common areas. *Id.* at 1448. The court refused to permit the HOA's unjust enrichment claim to proceed, finding that it would be "patently inequitable" and in frustration of the law and public policy to permit a party which has breached its fiduciary duties to bring an action for restitution against the persons harmed by that breach. *Id.* Here, Plaintiff, as the party claiming unjust enrichment, certainly owes no fiduciary duty to GEICO. If anything, GEICO is in a legally recognized special relationship with Plaintiff. *See Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.*, 50 Cal. 4th 913, 929 (2010).

Accordingly, Plaintiff's cause of action for unjust enrichment must be allowed stand.

/ / /
/ / /

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE

# V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendants' Motions under Rules 12(b)(6) and 12(f) in their entirety.

Dated: April 6, 2020                    **CARLSON LYNCH LLP**

By:   */s/Todd D. Carpenter*
Todd D. Carpenter (CA Bar No. 234464)
tcarpenter@carlsonlynch.com
(Eddie) Jae K. Kim (CA Bar No. 236805)
ekim@carlsonlynch.com
Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:       619-762-1900
Fax:        619-756-6991

*Attorneys for Plaintiff*
*and the Proposed Class*