UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHRAN DAVID ALAEI, an individual, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO), a Delaware corporation; GEICO GENERAL INSURANCE COMPANY, a Maryland corporation, and DOES 1 to 10,<br><br>Defendants. | Case No.: 3:20-cv-00262-L-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE** |

    Plaintiff brings this putative class action before the Court, alleging Defendants' conduct in the sale of insurance violates various California consumer protection laws. Defendants now move to dismiss or strike portions of Plaintiff's complaint under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. Plaintiff filed an opposition, and Defendants replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1.d.1. For the reasons stated below, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART** and Defendants' motion to strike is **DENIED**.

## I. BACKGROUND

Defendants Government Employees Insurance Company and GEICO General Insurance Company (collectively "GEICO" or "Defendants") engage in the marketing, promotion, sale, and service of auto insurance policies to consumers in the United States, including the County of San Diego. (Doc. no. 1-4 at 2). This action arises from Defendants' alleged fraudulent sale of insurance policies to consumers who believed they were receiving "full coverage" that included collision coverage on their vehicles. (Compl. (doc. no. 1) ¶ 5).

In or around August 2017, Plaintiff Mehran David Alaei,("Plaintiff") a San Diego resident, called a GEICO field office in San Diego to inquire about auto insurance options for his two vehicles: a 2012 Lexus RX350, owned by Plaintiff, and a 2016 Lexus ES350, leased by Plaintiff. (*Id.* ¶ 10). Specifically, Plaintiff requested an "apples to apples" quote[1] from GEICO "because the representative stated, consistent with GEICO's general marketing message, that Plaintiff could save up to 15% on the policy by switching to GEICO." (*Id.* ¶ 11). Consumers seek an "apples to apples" quote for two reasons: (1) to compare the price of Defendants' insurance premium to their existing premium, and (2) to purchase auto insurance coverage from Defendants that is identical to their existing coverage at a lower price. (*Id.* ¶¶ 1, 2).

At the time of Plaintiff's initial call to GEICO, both vehicles were insured by ESURANCE with "full coverage"—a term commonly used in the auto insurance industry to refer to a policy that includes both liability and collision coverage.[2] (*Id.* ¶¶ 11, 22, 24). The GEICO representative informed Plaintiff that he could save approximately $600.00 every six months by switching to Defendants' "full comprehensive coverage policy." (*Id.* ¶ 11). Plaintiff claims the representative assured him that Defendants' full comprehensive

---

[1] An "apples to apples" quote is a comparison of one's existing auto insurance policy to an identical policy offered by a competitor. (Compl. ¶ 1).
[2] Liability insurance "covers damages that an insured individual causes to another driver"; and collision insurance "covers damages to the insured's vehicle in the event of an accident where the insured is determined to be 'at fault' for the cause of the accident." (Compl. ¶ 22).

package was identical to Plaintiff's existing full coverage policy. (*Id.*). On or about August 23, 2017, Plaintiff, relying on the representative's assurance, switched from his ESURANCE full coverage policy to Defendants' full comprehensive package policy. (*Id.*).

On or about October 13, 2018, Plaintiff reported a claim to Defendants for repairs to his 2012 Lexus RX350 due to an at-fault accident. (*Id.* ¶ 12). That same day, Defendants denied Plaintiff's claim because his full comprehensive package policy had only liability coverage for the vehicle. (*Id.* ¶ 13). Plaintiff replied in protest, relying on the first representative's affirmation that his new policy would be identical to his prior full coverage policy. (*Id.* ¶ 14). The claim was denied. (*Id.*).

Plaintiff alleges Defendants deliver on their marketed promise of "15 minutes could save you 15% or more on car insurance" by fraudulently presenting inferior policies as full coverage policies. (*Id.* ¶ 23). Defendants instruct their representatives to present "full coverage" and "comprehensive insurance" as identical to consumers who request an "apples to apples" quote. (*Id.* ¶¶ 21, 23-26). It is commonly understood to consumers and Defendants that a "full coverage" policy will provide liability and collision coverage. (*Id.* ¶ 14). Consumers are not, however, familiar with the difference between comprehensive insurance and collision coverage. (*Id.* ¶ 25 ("Comprehensive insurance is intended to be an 'add on' to either a liability-only policy or a full-coverage policy . . . 68 percent of Americans incorrectly believe that comprehensive auto insurance covers car damage from collision. This is decidedly not the case."). Defendants' use of "comprehensive" in combination with "full" and "package"— terms associated with being "complete"—leads consumers to believe they are purchasing a full coverage policy. (*Id.* ¶¶ 25, 27-29).

In response to customer and employee complaints on the confusion caused by the full comprehensive package policy, Defendants' 2019 sales training guide instructs representatives to read the following statement: "Now that we have worked through the package you would like to purchase, I just want to let you know that since you do not have collision protection, your vehicle will not be covered if you are in an at fault accident." (*Id.*

¶ 39). The representative must disclose this to the consumer prior to taking payment, but only after the consumer has agreed to purchase the "inferior policy." (*Id.* ¶¶ 40-42).

Plaintiff alleges that other consumers have been harmed by Defendant's fraudulent conduct. (*See id.* ¶¶ 5-6). Accordingly, Plaintiff seeks to represent a class of "[a]ll consumers within the State of California who purchased a 'Full Comprehensive Package' from Defendants and did not receive collision insurance on their vehicle during the applicable statute of limitations." (*Id.* ¶ 44).

Plaintiff asserts four causes of action against Defendants: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"); (2) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"); (3) breach of contract, and (4) unjust enrichment. The Court has jurisdiction under 28 U.S.C. section 1332(d). The matter has been fully briefed by the parties.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).[3] Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010). Alternatively, a complaint may be dismissed if it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 534 (9th Cir. 1984). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs' allegations must provide "fair notice" of the claim being asserted and the "grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[3] Unless otherwise noted, internal quotation marks, ellipses, brackets, citations and footnotes are omitted from all quotations.

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Twombly*, 550 U.S. at 555. Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

### B. Motion to Strike

Rule 12(f) permits a court to "strike from a pleading any . . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). A matter is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Rule 12(f) is not meant to duplicate Rule 12(b)(6) or Rule 56. *See id.* Whether to grant a motion to strike is within the discretion of the court. *See id.* at 973.

## III. DISCUSSION

Defendants move to dismiss three causes of action—violation of the CLRA, breach of contract, unjust enrichment—and dismiss or strike Plaintiff's claim for UCL restitution. In particular, Defendants assert that: (1) the CLRA claim fails because the CLRA does not apply to the sale of insurance; (2) the breach of contract claim fails because there was no breach; and (3) the unjust enrichment claim and UCL restitution claim fail because Plaintiff does not sufficiently allege a claim for restitution. The Court discusses each issue in turn.

### A. Applicability of the CLRA

Plaintiff's claim for violation of the CLRA is premised upon Defendants' allegedly fraudulent conduct in the sale of insurance. Defendants argue automobile insurance is not a "good" or "service" as those terms are defined in the CLRA. (Doc. no. 6-1 at 3).

5

3:20-cv-00262-L-WVG

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The statute defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." *Id.* § 1761(a). "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b).

Defendants contend that automobile insurance is not a "good" or "service" covered by the CLRA because (1) it is not a tangible item, and (2) insurance contracts do not qualify as work or labor. *See, e.g., Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61-62 (2009) (finding insurance policies, even if paired with ancillary services provided by insurer, are not "goods" or "services" within the coverage of the CLRA); *Broberg v. The Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 924-25 ("Obviously, insurance contracts are not work or labor . . . They are simply agreements to pay if and when an identifiable event occurs.").

Plaintiff concedes and does not dispute Defendant's challenge to Plaintiff's claim under the CLRA. Opposition n. 2 at 2. Therefore, the Court grants Defendants motion to dismiss on this claim.

**B.  Breach of Contract**

Defendants argue there is no breach because the only claim GEICO denied— Plaintiff's collision coverage claim— was not covered by the contract issued by GEICO. (Doc. no. 6-1 at 6).

1.  *Oral Contract*

Plaintiff contends that (1) Defendants breached the operative contract which is an oral agreement formed on August 23, 2017 between Plaintiff and the GEICO representative, not the written policy; and (2) Defendants breached the implied covenant of good faith and fair dealing by denying coverage under a policy that was intended to include collision insurance pursuant to the oral agreement. (Doc. no. 10 at 21-25).

Defendants argue there is no enforceable oral contract because (1) there was no "meeting of the minds" as there was no mutual understanding of the terms of the agreement, and (2) Plaintiff fails to allege that the August 2017 oral contract lasted longer than the "standard six-month period," and that any portion of the oral contract was in effect in October 2018, the time of Plaintiff's accident and claim submission. (Doc. no. 11 at 4-5).

To establish the existence of an oral contract of insurance, there must be proof of mutual assent (offer and acceptance) supported by lawful consideration (mutuality of obligation). *Apparel Mfrs.' Supply Co. v. National Auto. & Cas. Ins. Co.*, 189 Cal. App. 2d 443, 454 (1961). Proof of an alleged oral contract must be clear and convincing, and the parties must agree on all the essential terms. *K.C. Working Chemical Co. v. Eureka-Sec. Fire & Marine Ins. Co. of Cincinnati, Ohio*, 82 Cal. App. 2d 120, 133 (1947) ("The consent is not mutual unless the parties all agree upon the same thing in the same sense and unless they do so agree there is no contract."). An oral contract of insurance is formed only if the insured retains the policy with knowledge of the altered terms. *Linnastruth v. Mutual Benefit Health & Accident Ass'n*, 22 Cal. 2d 216, 219 (1943) ("A meeting of minds is essential.").

There is no "meeting of the minds" here as Defendants knew they were offering a policy to Plaintiff that did not include collision coverage, and Plaintiff believed that the policy included collision coverage. (*See* Compl. ¶¶ 13-14 (alleging Plaintiff believed the policy included collision coverage, in contrast to the reality of the policy's coverage), ¶ 31 (alleging GEICO representatives knew they were offering a policy that did not include collision)).

Plaintiff points to Defendants' failure to present the Court with a written contract signed by Plaintiff as proof of there being no document showing Plaintiff agreed to the modified terms. (Doc. no. 10 at 23). He, however, fails to allege that he was unable to review the written policy mailed to him, or that he refused to accept the written policy upon receipt. *Linnastruth*, 22 Cal. 2d at 219 ("If the acceptance [of the insured's offer to purchase insurance] modifies or alters any of the terms of the proposal, it must then in turn be

accepted by the applicant to be effective as a contract."). Notably, a policy in writing supersedes negotiations or stipulations concerning its subject that preceded or accompanied the execution of the instrument. Cal. Civ. Code § 1625.

> In fact it is the universal custom of insurance companies to issue written policies, with full and minute specifications as to their liability and the exceptions that would make the policy void. The preliminaries, as in contracts for the sale of real estate, are usually only negotiations which are afterwards merged into the written contract.

*Blos v. Bankers Life Co.*, 133 Cal. App. 2d 147, 152 (1955). As such, an oral contract of insurance is ordinarily merged into a subsequent written contract or policy. *See* Hon. H. Walter Croskey, et al., *Rutter Group–Cal. Practice Guide: Ins. Litig. 2:102.*

Plaintiff offers no allegations explaining the duration of the initial oral contract nor which contract covered the October 2018 claim. (*See, e.g.,* Compl. ¶¶ 13-14). As Defendants highlighted, even if the oral contract was properly formed in August 2017, it would have expired by the time the alleged breach took place, October 2018. With a six-month contract, the oral contract would have expired on February 23, 2017; with a one-year contract, the oral contract would have expired on August 23, 2018. Additionally, if the oral contract extended beyond one-year, it would need to be a written contract to be enforceable. *See* 2 Witkin, Summ. Cal. Law, Insurance § 30 (10th ed. 2005) (explaining that while oral contracts for insurance coverage are "unusual," they are valid and enforceable unless the Statute of Frauds applies). As alleged, the Statute of Frauds applies in the present case because Plaintiff asserts the alleged oral contract's term extended definitively beyond one year to cover Plaintiff's October 2018 claim. *C.f. Dutton Dredge Co. v. U.S. Fidelity & Guaranty Co.*, 136 Cal. App. 574, 579 (1934) (holding that an oral contract for insurance coverage was not within the Statute of Frauds because it could be terminated at any time by either party, and did not by its terms extend beyond one year).

For the foregoing reasons, Plaintiff fails to sufficiently plead claims for breach of oral contract and breach of the implied covenant of good faith and fair dealing because: (1) there was no "meeting of the minds" in the alleged oral contract; (2) Plaintiff does not

allege he was unable to review the written policy mailed to him, nor that he refused to accept the altered terms of the written policy; and (3) even if an oral contract had been properly formed, it would be unenforceable because Plaintiff alleges the oral contract's term extended beyond one year, triggering the Statute of Frauds' written requirement.

### 2. *Contract Reformation*

Plaintiff alternatively argues for contract reformation to include collision coverage in the written policy (*see* doc. no. 10 at 7 ("[W]ritten terms are later mailed to the customers") and require Defendants to pay for previously denied claims. (Doc. no. 10 at 26). Defendants argue that reformation is not applicable in this case because the parties did not have a mutual understanding of including collision coverage in the full comprehensive package policy. (Doc. no. 11 at 5-6). Plaintiff opposes, arguing he seeks reformation based on Defendants' false representations and fraudulent omissions that the full comprehensive package policy was identical to the full coverage policy. (Doc. no. 10 at 26).

The remedy of contractual reformation is the power to reform contracts that failed to express the mutual agreement of the parties and is available "only in the event of mistake or fraud." *Gabriel v. Alaska Elect. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014). In the case of a mistake, plaintiff must plead (1) that a mistake of fact or law affected the terms of the contract and if there is evidence of the parties' true intent; or (2) both parties were mistaken about the content or effect of the contract and the contract must be reformed "to capture the terms upon which the parties had a meeting of the minds." *Id.* at 955. Under a fraud theory, a plaintiff must plead either "(1) "[a contract] was procured by wrongful conduct, such as undue influence, duress, or fraud," or (2) a "party's assent [to a contract] was induced by the other party's misrepresentations as to the terms or effect of the contract" and he "was justified in relying on the other party's misrepresentations." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012).

Plaintiff asserts reformation is adequately alleged because he purchased the full comprehensive package policy in August 2017, pursuant to an oral agreement, due to Defendants' fraudulent conduct. (Doc. no. 10 at 26). This means the contract allegedly

obtained by deception is the August 2017 contract, oral or written. As discussed above, however, the Court does not know if the August 2017 contract covered Plaintiff's October 2018 claim. It is also unknown whether Plaintiff was unable to review the written policy before agreeing to purchase coverage from Defendants for his October 2018 claim, if the August 2017 contract expired before that time. *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 419-20 (1996) (finding fraud does not render a written contract void where the defrauded party had a reasonable opportunity to discover the real terms of the contract). It is premature for the Court to reach a conclusion on this matter without this information. *Lane v. Davis*, 172 Cal.App.2d 302, 309-10 (1959). Accordingly, the Court denies Defendants motion to dismiss Plaintiffs breach of written contract claim.

### C. Basis for Restitution under the UCL

Plaintiff requests UCL restitution of all, or a portion of, the monies wrongfully obtained due to Defendants' false representations and material omissions that the full comprehensive package policy was a full coverage policy. (Doc. no. 10 at 13; Compl. ¶¶ 52, 62). Plaintiff contends he adequately alleges actual harm by way of purchasing an "inferior" policy, an action he would not have taken had he known of Defendants' misrepresentations. (Doc. no. 10 at 13). Defendants argue the Court should dismiss or strike Plaintiff's claim because he "does not" and "cannot" allege that he paid more for his policy than the value he received from its coverage. (Doc. no. 6-1 at 7).

The UCL provides that "[t]he court may make such orders or judgments ... as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (Bus. & Prof.Code, § 17203. "The remedies available in a UCL or FAL action are generally limited to injunctive relief and restitution." *Pfizer Inc., v. Superior Court*, 182 Cal.App. 4th 622, 631 (2010). No recovery for damages is permitted under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1144 ("A UCL action is equitable in nature; damages cannot be recovered.")  The "cost minus value," or difference between what the plaintiff paid and the value of what the plaintiff received, is one of the methods for

calculating the proper measure of restitution. *In re Vioxx Class Cases*, 180 Cal.App. 4th 116, 131 (2009). However, UCL restitution may also account for "what a purchaser would have paid at the time of purchase had the purchaser received all the information" *Pulaski & Middleman, LLC v Google, Inc.*, 802 F.3d 979, 989 (9th cir. 2015).

With respect to restitution permitted under the UCL, the Court has "very broad" discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired. *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 180 (2000). Restitution under the UCL is consistently awarded with the goal of "restoring" money wrongfully taken as a result of the defendant's unlawful, unfair or fraudulent practices. *Korea Supply Co.*, 29 Cal. 4th at 1147-48.

        1.    *Full Refund*

Plaintiff seeks a full refund claiming that Defendants fraudulently induced him to purchase their policy by representing that collision coverage was included. (Compl. ¶ 13). Plaintiff claims he would not have purchased the full comprehensive package policy absent Defendants' misrepresentation, or would not have paid the agreed upon price for the "inferior" policy. (Compl. ¶¶ 52, 71).

Defendants contend there is no difference between what the Plaintiff paid for the policy and the value Plaintiff received. (Doc. no. 6-1 at 7). This is true as a matter of law, according to Defendant, because "restitution is available only to the extent the plaintiff parted with more money than the value of whatever was received in return" and Plaintiff received equal value for his premium payments through his full comprehensive package policy, including liability coverage. (*Id.* at 8 (citing *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 801-02 (2015))).

"A full refund may be available in a UCL case when the plaintiffs prove the product had no value to them." *In re Tobacco Cases II,* 240 Cal. App. 4th. at 795. Here, Plaintiff paid for a full comprehensive package policy and received the value of that coverage by receiving comprehensive and liability coverage, which included liability coverage for

Plaintiff's October 2018 accident. (Compl. ¶¶ 12-13). Thus, Plaintiff received some value from his purchase, and he cannot receive a full refund under the UCL. *In re Tobacco*, 240 Cal. App. 4th at 795.

  2. *Partial Refund*

Plaintiff claims that he and the Class will demonstrate that they are entitled to the difference between what they actually paid and what they would have paid if they knew that the "Full Comprehensive Package" excluded collision coverage. (Oppo. at 9).

Defendants maintain that because Plaintiff seeks to recover a portion of the premiums paid under the full comprehensive package policy, and because the rate is filed with and approved by the Department of Insurance, no restitution is available under the UCL because courts may not interfere with department ratemaking. (Doc. no. 6-1 at 8). "Like all auto insurers in California, GEICO is required by Proposition 103 to charge only the premium approved by the Department of Insurance ('DOI'), which rate [sic] cannot be 'excessive.'" (*Id.*) (citing Cal. Ins. Code § 1861.05).

Any partial refund must comport with the enabling statute, Business & Professionals section 17204 which provides that the Court may award restitution "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus & Prof 17204. "The filed-rate doctrine provides that rates duly adopted by a regulatory agency are not subject to collateral attack in court." *MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1449 (2010). In industries such as car insurance, the filed-rate doctrine prohibits an entity subject to regulatory requirements from charging rates for its services other than those properly filed with the appropriate federal regulatory authority, such as the Department of Insurance. *See generally Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 335 (1998); Cal. Ins. Code § 1860.1 (protects insurers from prosecution under laws outside the Insurance Code only for "act[s] done, action[s] taken [and] agreement[s] made pursuant to the authority conferred by" the ratemaking chapter.") Though the "filed-rate doctrine originated in federal courts, it "has been held to apply equally to rates filed with state agencies by every court to have

considered the question." *MacKay*, 188 Cal. App. 4th at 1449. Put simply, "there is no tort liability for charging a rate that has been approved by the commissioner." *Mackay*, 188 Cal. App. 4th at 1449.

Plaintiff claims that he and the Class are entitled to an amount equal to the difference between what they actually paid and what they would have paid if they had known that the "Full Comprehensive Package" did not include collision coverage. Stated differently, Plaintiff claims that he and other putative class members were duped into paying more than the policy was worth, given the absence of collision coverage, due to the misrepresentation by the GEICO phone agent. To the extent Plaintiff is seeking restitution on the basis that he overpaid for his policy, there is a presumption that the rate is not excessive because the policy was set by the Department of Insurance based on the services covered. Ins. Code. 186105; *MacKay*, 188Cal.App.4th at 1448-49.

In addition, in order to award restitution to Plaintiff, the Court must ask whether Defendants have obtained something which they are not entitled to keep. *Day v. AT&T Corp.*, 63 Cal.App. 4th 325, 340 (1998)("[t]he offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep.") However, a consumer who purchases a comprehensive policy that does not include collision coverage, "obtains the full value of what was paid for and therefore has given up nothing, regardless of whether he or she was improperly induced to purchase the [policy] in the first place." *Id*. This would not be the case if Plaintiff's claim relied on conduct separate from the charging of an approved rate. *See MacKay*, 188 Cal. App. 4th at 1450 ("Indeed, if the underlying conduct challenged was not the charging of an approved rate, but the application of an unapproved underwriting guideline, Insurance Code section 1860.1 would not be applicable.").

Plaintiff cites numerous cases in support of his argument that the Court has liberal discretion to fashion a restitution award, and is not limited to the "cost minus value" method of restitution. Yet those cases are not instructive or binding because they concern commercial transactions that do not arise in the context of a rate regulated industry, such

as auto insurance. Instead, they address deceptive sales practices in the pharmaceutical industry, cigarette industry, and packaged cereal industry, among others. *See generally*, *In re Vioxx Class Cases*, 180 Cal.App. 4th 116, 131 (2009); *Johns v. Bayer Corp.*, 2012 WL 1520030 at *5 (S.D. Cal. Apr.30, 2012); *Astiana v. Kashi, Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013). Where, as here, restitution is constricted by standards set by a rate-regulated industry, the Court does not have broad discretion to award restitution that could improperly inject the Court into the role of rate regulator.

For the foregoing reasons, the Court grants Defendants motion to dismiss Plaintiff's claim for restitution under the UCL.

### 3. *Motion to Strike*

In the Ninth Circuit, a court may not strike prayers for damages even if they are unavailable as a matter of law: "[A] claim for damages is not immaterial, because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief . . . [and] is not impertinent, because whether these damages are recoverable pertains directly to the harm being alleged." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Additionally, the issue of whether restitution is available to Plaintiff is not a "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As such, the Court denies Defendants' motion to strike Plaintiff's claim for restitution.

### D. **Basis for Restitution for Unjust Enrichment**

Defendant asserts Plaintiff's unjust enrichment claim must be dismissed because he fails to plead facts showing an entitlement to restitution. (Doc. no. 6-1 at 7). Plaintiff opposes, contending he can bring a claim for unjust enrichment alternatively as a quasi-contract claim seeking restitution. (Doc. no. 10 at 27; *see Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).

When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014). "Unjust enrichment," is interpreted as synonymous with

"restitution," and therefore, there is no standalone cause of action for unjust enrichment. *Astiana*, 783 F.3d at 762.

Plaintiff's claim for unjust enrichment fails because the complaint does not allege he paid Defendants more than the reasonable value of services he received. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010). Without entitlement to restitution, Plaintiff cannot proceed with this claim. *Id.*

## IV. LEAVE TO AMEND

When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Because the Court finds that the deficiencies in the Complaint may be cured by amendment, the Court grants Plaintiff leave to amend.

## V. CONCLUSION

For the foregoing reasons:

(1) Defendants' motion to strike is denied;

(2) Defendants' motion to dismiss is denied insofar as Plaintiff alleges a claim for contract reformation, and granted in all other respects;

**(3)** With the exception of the CLRA claim, Plaintiff is granted leave to amend.

**IT IS SO ORDERED.**

Dated: March 25, 2021

Hon. M. James Lorenz
United States District Judge