UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHRAN DAVID ALAEI, an individual, all others similarly situated, and the general public,<br><br>                      Plaintiff,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO), a Delaware corporation; GEICO GENERAL INSURANCE COMPANY, a Maryland corporation, and DOES 1 to 10,<br><br>                      Defendants. | Case No.: 3:20-cv-00262-L-WVG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [DOC NO. 17.]** |

   Plaintiff brings this putative class action before the Court, alleging Defendants' conduct in the sale of insurance violates various California consumer protection laws. Defendants now move to dismiss Plaintiff's First Amended Complaint complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed an opposition, and Defendants replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1.d.1. For the reasons stated below, Defendants' motion to dismiss is **DENIED.**

## I. BACKGROUND

Defendants Government Employees Insurance Company and GEICO General Insurance Company (collectively "GEICO" or "Defendants") engage in the marketing, promotion, sale, and service of auto insurance policies to consumers in the United States, including the County of San Diego. (Doc. No. 1 at 2). This action arises from Defendants' alleged fraudulent sale of insurance policies to consumers who believed they were receiving "full coverage" that included collision coverage on their vehicles. (Compl. (doc. no. 1) ¶ 5).

In or around August 2017, Plaintiff Mehran David Alaei,("Plaintiff") a San Diego resident, called a GEICO field office in San Diego to inquire about auto insurance options for his two vehicles: a 2012 Lexus RX350, owned by Plaintiff, and a 2016 Lexus ES350, leased by Plaintiff. (*Id.* ¶ 10). Specifically, Plaintiff requested an "apples to apples" quote[1] from GEICO "because the representative stated, consistent with GEICO's general marketing message, that Plaintiff could save up to 15% on the policy by switching to GEICO." (*Id.* ¶ 11). Consumers seek an "apples to apples" quote for two reasons: (1) to compare the price of Defendants' insurance premium to their existing premium, and (2) to purchase auto insurance coverage from Defendants that is identical to their existing coverage at a lower price. (*Id.* ¶¶ 1, 2).

At the time of Plaintiff's initial call to GEICO, both vehicles were insured by ESURANCE with "full coverage"—a term commonly used in the auto insurance industry to refer to a policy that includes both liability and collision coverage.[2] (*Id.* ¶¶ 11, 22, 24). The GEICO representative informed Plaintiff that he could save approximately $600.00 every six months by switching to Defendants' "full comprehensive coverage policy." (*Id.* ¶ 11). Plaintiff claims the representative assured him that Defendants' full comprehensive

---

[1] An "apples to apples" quote is a comparison of one's existing auto insurance policy to an identical policy offered by a competitor. (Compl. ¶ 1).
[2] Liability insurance "covers damages that an insured individual causes to another driver"; and collision insurance "covers damages to the insured's vehicle in the event of an accident where the insured is determined to be 'at fault' for the cause of the accident." (Compl. ¶ 22).

package was identical to Plaintiff's existing full coverage policy. (*Id.*). On or about August 23, 2017, Plaintiff, relying on the representative's assurance, switched from his ESURANCE full coverage policy to Defendants' full comprehensive package policy. (*Id.*).

On or about October 13, 2018, Plaintiff reported a claim to Defendants for repairs to his 2012 Lexus RX350 due to an at-fault accident. (*Id.* ¶ 12). That same day, Defendants denied Plaintiff's claim because his full comprehensive package policy had only liability coverage for the vehicle. (*Id.* ¶ 13). Plaintiff replied in protest, relying on the first representative's affirmation that his new policy would be identical to his prior full coverage policy. (*Id.* ¶ 14). The claim was denied. (*Id.*).

Plaintiff alleges Defendants deliver on their marketed promise of "15 minutes could save you 15% or more on car insurance" by fraudulently presenting inferior policies as full coverage policies. (*Id.* ¶ 23). Defendants instruct their representatives to present "full coverage" and "comprehensive insurance" as identical to consumers who request an "apples to apples" quote. (*Id.* ¶¶ 21, 23-26). It is commonly understood to consumers and Defendants that a "full coverage" policy will provide liability and collision coverage. (*Id.* ¶ 14). Consumers are generally not familiar with the difference between comprehensive insurance and collision coverage. (*Id.* ¶ 25). Defendants' use of "comprehensive" in combination with "full" and "package"— terms associated with being "complete"—leads consumers to believe they are purchasing a full coverage policy. (*Id.* ¶¶ 25, 27-29).

Plaintiff alleges that other consumers have been harmed by Defendant's fraudulent conduct. (*See id.* ¶¶ 5-6). Accordingly, Plaintiff seeks to represent a class of "[a]ll consumers within the State of California who purchased a 'Full Comprehensive Package' from Defendants and did not receive collision insurance on their vehicle during the applicable statute of limitations." (*Id.* ¶ 44).

Plaintiff asserted four causes of action against Defendants in the initial Complaint: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"); (2) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"); (3) breach of contract, and (4) unjust enrichment.

On March 25, 2021, the Court granted in part and denied in part Defendant's motion to dismiss, and denied Defendant's motion to strike. (Doc. No. 13).  The Court denied the motion as to Plaintiff's breach of written contract claim, and also left the UCL claim intact. (*Id.*) On July 14, 2021, Defendant's filed the current Motion to Dismiss the First Amended Complaint seeking dismissal of Plaintiff's UCL claim for injunctive relief.  (Mot. at 1).

The Court has jurisdiction under 28 U.S.C. section 1332(d). The matter has been fully briefed by the parties.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).[3] Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Alternatively, a complaint may be dismissed if it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs' allegations must provide "fair notice" of the claim being asserted and the "grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Twombly*, 550 U.S. at 555. Similarly, "conclusory allegations of law and unwarranted inferences are

---

[3] Unless otherwise noted, internal quotation marks, ellipses, brackets, citations and footnotes are omitted from all quotations.

not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

### III.  DISCUSSION

In the First Amended Complaint, Plaintiff alleges that Plaintiff and the "general public will continue to suffer financial harm in that they will continue to pay for auto insurance policies they would not have otherwise spent money on had they known that the policies being purchased did not include collision coverage." (FAC ¶¶ 64, 65). Plaintiff requests injunctive relief on behalf of "himself and the general public enjoining GEICO from continuing to engage in the unfair competition alleged above." (*Id*.)

Defendants move to dismiss the UCL injunctive relief claim arguing (1) the claim is moot because the objectionable sales practice has been abandoned; (2) Plaintiff lacks standing because he has not been harmed by GEICO's current sales practice; and (3) Plaintiff has failed to allege the current practice is deceptive and likely to deceive an ordinary, reasonable consumer. (MTD at 1).

In response, Plaintiff contends that Defendants waived any challenge to the UCL claim for injunctive relieve because Defendants did not raise the argument in the first motion to dismiss under Rule 12(b)(6), as required by Rule 12(g). (Oppo. at 4). In addition, Plaintiff argues that Defendant's voluntary cessation of the challenged policy does not moot Plaintiff's injunctive relief claim because the Court may still determine the legality of the challenged practice. (*Id*. at 6). Plaintiff claims he has standing to seek injunctive relief because there is a threat of future harm to Plaintiff. (*Id*. at 9-10). Finally, whether GEICO's current sales practice is deceptive is a question of fact not appropriate for a motion to dismiss, according to Plaintiff. (*Id*. at 11).

Under the UCL, unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal.Bus. & Prof. Code § 17200. The UCL provides that any person who engages, or who has engaged, in unfair competition may be enjoined, and "[t]he court may make such orders or judgments ... as may be necessary to restore to any person in interest any money or

property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code, § 17203. "The remedies available in a UCL or FAL action are generally limited to injunctive relief and restitution." *Pfizer Inc., v. Superior Court*, 182 Cal.App. 4th 622, 631 (2010). Claims under the UCL may be brought by a plaintiff acting in the capacity of a private attorney general, evidencing the public purpose of the regulation. Cal. Bus. & Prof. Code § 17203.

        1.    *Rule 12(g)*

Rule 12(g)(2), provides that "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ.P. 12(g)(2). The Ninth Circuit has recognized an exception to this rule, finding that "[a] defendant who omits a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not waive that defense." *In re Apple iPhone Antitrust Litigation,* 846 F.3d 313, 317-18 (9th Cir. 2017). A district court may exercise its discretion to adjudicate a defense or objection that would normally be foreclosed by Rule 12(g)(2) if doing so advances the efficient administration of cases, with the appellate court finding that it "should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion." *Id.* at 319.

Plaintiff argues that Defendant waived its challenge to UCL injunctive relief claim under Federal Rule 12(g) when it expressly stated it was not attacking the claim in the prior motion to dismiss. (Oppo. at 4). GEICO argues in response that the Court should treat this Motion "in substance as a motion under Rule 12(c)," which is outside the purview of Rule 12(g), because GEICO commits to answering within ten days of the Court's ruling on the current motion. (Reply at 2). Alternatively, Defendant claims that this Court has discretion to consider a successive Rule 12 motion where the motion does not prejudice any party and expedites resolution of the case. (*Id.*)

In the present action, Defendant could and should have raised its objection to Plaintiff's claim for injunctive relief under the UCL in its original Rule 12(b)(6) motion to

dismiss. As Defendant notes, the facts have not changed since that filing was made, therefore, the defense was available at that time. However, disallowing the present challenge to Plaintiff's UCL injunctive relief claim would merely kick that argument down the road for another day. Instead, the Court finds that the "just, speedy, and inexpensive determination" of this claim warrants proceeding on the merits at this time. *Id.* at 318 (quoting Fed.R.Civ.P. 1).

 2. *Standing*

To proceed with a case, a plaintiff must demonstrate standing by alleging (1) an "injury in fact" or harm suffered by the plaintiff that is "actual or imminent," (2) "a fairly traceable connection between plaintiff's injury and the complained-of-conduct of the defendant," and (3) the relief plaintiff requests is likely to redress the alleged injury. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* citing *O'Shea v. Littleton*, 414 U.S. 488, 497-97 (1974). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

Defendant argues that GEICO halted the challenged practice before the present case was filed, therefore Plaintiff lacks standing to assert a claim for injunctive relief because he cannot demonstrate that he was subject to a "continuing, present" injury as of the filing date of the complaint. (MTD at 5). Defendant further contends that Plaintiff conflates the requirements of Article III standing and the principles of mootness by claiming that the possibility of future resumption of the practice constitutes a credible threat of future harm to confer standing. (*Id*. at 3).

Plaintiff argues that he has standing because it has not been established through discovery that Defendant's policy has changed, despite Defendant's erroneous assertion that Plaintiff admitted in the FAC that GEICO abandoned the former sales practice. (Oppo.

at 9). Further, Plaintiff argues that standing to pursue injunctive relief is conferred where a consumer would like to, or might, purchase the product but is unable to rely on the veracity of the product's advertising or labeling due to past deception, relying on *Davidson v. Kimberly- Clark*, 889 F.3d 956 (9th Cir. 2018).  (*Id*. at 9-10).

In the First Amended Complaint, Plaintiff argues that he and the class have suffered and will continue to suffer financial harm through Defendant's deceptive practice of selling policies which are marketed as "Comprehensive" but do not contain collision coverage. (FAC at ¶ 64). Allegedly, Defendant updated its Sales Training and Performance guide in mid-2019 in response to complaints about the previous policy. (FAC ¶ 39). The updated information is contained within a GEICO internal Memorandum, which purportedly states that GEICO "want[s] our customers to have a full understanding of their coverage package including when offering Comprehensive without Collision" and that to effect that change in policy, the sales agents are instructed to tell the customer after the customer has committed to the policy purchase, something to the effect of "[n]ow that we have worked through the package you would like to purchase, I just want to let you know that since you do not have collision protection, your vehicle will not be covered if you are in an at fault accident." (FAC at ¶¶ 39, 42, 44).

Contrary to Defendant's assertion, Plaintiff did not admit in the FAC the former practice has been abandoned. Instead, as noted above, Plaintiff states that GEICO updated its "Sales Training and Performance" guide as outlined in the internal Memorandum. (FAC ¶¶ 39-44). In the context of a Rule 12(b)(6) motion, a Court will not consider evidence or documents beyond the complaint, absent specific exceptions. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1990) (amended decision). One of these exceptions allows a court "to accept and consider extrinsic materials offered in connection with [a motion to dismiss], and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." *Hamilton Materials, Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1207 (9th Cir.2007) (citing

*Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan,* 662 F.2d 641, 645 (9th Cir.1981)). Rule 12(d) specifically provides:

> If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All of the parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d). Here, the parties reference the Internal Memorandum but have not provided it to the Court for review. Moreover, the Internal Memorandum has not been verified through independent discovery as the current policy, therefore, it is unclear what policy is in place. Accordingly, the Court cannot consider the Internal Memorandum in this motion to dismiss under 12(b)(6) because it constitutes material beyond the pleadings. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Without that information, it is premature for the Court to determine whether there is a present or future threat to Plaintiff or others sufficient to confer standing for purposes of this motion to dismiss. The Court declines to adjudicate Defendant's arguments that the claim is moot and lacks merit because these arguments rest on whether the practice is currently in place or has been abandoned.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: November 15, 2021

_____
Hon. M. James Lorenz
United States District Judge